# WEST VIRGINIA EX REL. DYER ET AL. v. SIMS, STATE AUDITOR.

No. 147.   Argued December 5, 1950.—Decided April 9, 1951.

*John B. Hollister* argued the cause for petitioners. With him on the brief were *William C. Marland,* Attorney General of West Virginia, *Thomas J. Gillooly,* Assistant Attorney General, and *Leonard A. Weakley.*

*Charles C. Wise, Jr.* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* supporting petitioners were filed on behalf of the United States by *Solicitor General Perlman, Oscar H. Davis, Alanson W. Willcox* and *Gladys A. Harrison;* on behalf of the States of Illinois by *Ivan A. Elliott,* Attorney General, and *Lucien S. Field* and *William C. Wines,* Assistant Attorneys General, Indiana by *J. Emmett McManamon,* Attorney General, Kentucky by *A. E. Funk,* Attorney General, and *Squire N. Williams, Jr.,* Assistant Attorney General, New York by *Nathaniel L. Goldstein,* Attorney General, Ohio by *Herbert S. Duffy,* Attorney General, *William C. Bryant,* Chief Counsel to the Attorney General, and *W. H. Annat* and *Hugh A. Sherer,* Assistant Attorneys General, and Pennsylvania by *Charles J. Margiotti,* then Attorney General, *M. Vashti Burr,* Deputy Attorney General, and *Harry F. Stambaugh;* and on behalf of the State of Pennsylvania by *Charles J. Margiotti,* then Attorney General, *M. Vashti Burr,* Deputy Attorney General, and *Harry F. Stambaugh.*

24

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

After extended negotiations eight States entered into a Compact to control pollution in the Ohio River system. See Ohio River Valley Water Sanitation Compact, 54 Stat. 752. Illinois, Indiana, Kentucky, New York, Ohio, Pennsylvania, Virginia and West Virginia recognized that they were faced with one of the problems of government that are defined by natural rather than political boundaries. Accordingly, they pledged themselves to cooperate in maintaining waters in the Ohio River basin in a sanitary condition through the administrative mechanism of the Ohio River Valley Water Sanitation Commission, consisting of three members from each State and three representing the United States.

The heart of the Compact is Article VI. This provides that sewage discharged into boundary streams or streams flowing from one State into another "shall be so treated, within a time reasonable for the construction of the necessary works, as to provide for substantially complete removal of settleable solids, and the removal of not less than forty-five per cent (45%) of the total suspended solids; provided that, in order to protect the public health or to preserve the waters for other legitimate purposes, . . . in specific instances such higher degree of treatment shall be used as may be determined to be necessary by the Commission after investigation, due notice and hearing." Industrial wastes are to be treated "to such degree as may be determined to be necessary by the Commission after investigation, due notice and hearing." Sewage and industrial wastes discharged into streams located wholly within one State are to be treated "to that extent, if any, which may be necessary to maintain such waters in a sanitary and satisfactory condition at least equal to the condition of the waters of the interstate stream immediately above the confluence."

Article IX provides that the Commission may, after notice and hearing, issue orders for compliance enforceable in the State and federal courts. It further provides: "No such order shall go into effect unless and until it receives the assent of at least a majority of the commissioners from each of not less than a majority of the signatory States; and no such order upon a municipality, corporation, person or entity in any State shall go into effect unless and until it receives the assent of not less than a majority of the commissioners from such state."

By Article X the States also agree "to appropriate for the salaries, office and other administrative expenses, their proper proportion of the annual budget as determined by the Commission and approved by the Governors of the signatory States . . . ."

The present controversy arose because of conflicting views between officials of West Virginia regarding the responsibility of West Virginia under the Compact.

The Legislature of that State ratified and approved the Compact on March 11, 1939. W. Va. Acts 1939, c. 38. Congress gave its consent on July 11, 1940, 54 Stat. 752, and upon adoption by all the signatory States the Compact was formally executed by the Governor of West Virginia on June 30, 1948. At its 1949 session the West Virginia Legislature appropriated $12,250 as the State's contribution to the expenses of the Commission for the fiscal year beginning July 1, 1949. W. Va. Acts 1949, c. 9, Item 93. Respondent Sims, the auditor of the State, refused to issue a warrant upon its treasury for payment of this appropriation. To compel him to issue it, the West Virginia Commissioners to the Compact Commission and the members of the West Virginia State Water Commission instituted this original mandamus proceeding in the Supreme Court of Appeals of West Virginia. The court denied relief on the merits, 134 W. Va. ——, 58 S. E. 2d 766, and we brought the case here,

340 U. S. 807, because questions of obviously important public interest are raised.

The West Virginia court found that the "sole question" before it was the validity of the Act of 1939 approving West Virginia's adherence to the Compact. It found that Act invalid in that (1) the Compact was deemed to delegate West Virginia's police power to other States and to the Federal Government, and (2) it was deemed to bind future legislatures to make appropriations for the continued activities of the Sanitation Commission and thus to violate Art. X, § 4 of the West Virginia Constitution.

Briefs filed on behalf of the United States and other States, as *amici,* invite the Court to consider far-reaching issues relating to the Compact Clause of the United States Constitution. Art. I, § 10, cl. 3. The United States urges that the Compact be so read as to allow any signatory State to withdraw from its obligations at any time. Pennsylvania, Ohio, Indiana, Illinois, Kentucky and New York contend that the Compact Clause precludes any State from limiting its power to enter into a compact to which Congress has consented. We must not be tempted by these inviting vistas. We need not go beyond the issues on which the West Virginia court found the Compact not binding on that State. That these are issues which give this Court jurisdiction to review the State court proceeding, 28 U. S. C. § 1257, needs no discussion after *Delaware River Comm'n* v. *Colburn,* 310 U. S. 419, 427.

Control of pollution in interstate streams might, on occasion, be an appropriate subject for national legislation. Compare *Oklahoma* v. *Atkinson Co.,* 313 U. S. 508. But, with prescience, the Framers left the States free to settle regional controversies in diverse ways. Solution of the problem underlying this case may be attempted directly by the affected States through contentious litigation before this Court. *Missouri* v. *Illinois,* 180 U. S. 208, 200 U. S. 496; *New York* v. *New Jersey,* 256 U. S. 296. Adju-

dication here of conflicting State interests affecting stream pollution does not rest upon the law of a particular State. This Court decides such controversies according to "principles it must have power to declare." *Missouri v. Illinois, supra,* 200 U. S. at 519. But the delicacy of interstate relationships and the inherent limitations upon this Court's ability to deal with multifarious local problems have naturally led to exacting standards of judicial intervention and have inhibited the formulation of a code for dealing with such controversies. As Mr. Justice Holmes put it: "Before this court ought to intervene the case should be of serious magnitude, clearly and fully proved, and the principle to be applied should be one which the court is prepared deliberately to maintain against all considerations on the other side." *Missouri v. Illinois, supra,* 200 U. S. at 521.

Indeed, so awkward and unsatisfactory is the available litigious solution for these problems that this Court deemed it appropriate to emphasize the practical constitutional alternative provided by the Compact Clause. Experience led us to suggest that a problem such as that involved here is "more likely to be wisely solved by coöperative study and by conference and mutual concession on the part of representatives of the States so vitally interested in it than by proceedings in any court however constituted." *New York* v. *New Jersey, supra,* at 313. The suggestion has had fruitful response.

The growing interdependence of regional interests, calling for regional adjustments, has brought extensive use of compacts. A compact is more than a supple device for dealing with interests confined within a region. That it is also a means of safeguarding the national interest is well illustrated in the Compact now under review. Not only was congressional consent required, as for all compacts; direct participation by the Federal Government was pro-

vided in the President's appointment of three members of the Compact Commission. Art. IV; Art. XI, § 3.

But a compact is after all a legal document. Though the circumstances of its drafting are likely to assure great care and deliberation, all avoidance of disputes as to scope and meaning is not within human gift. Just as this Court has power to settle disputes between States where there is no compact, it must have final power to pass upon the meaning and validity of compacts. It requires no elaborate argument to reject the suggestion that an agreement solemnly entered into between States by those who alone have political authority to speak for a State can be unilaterally nullified, or given final meaning by an organ of one of the contracting States. A State cannot be its own ultimate judge in a controversy with a sister State. To determine the nature and scope of obligations as between States, whether they arise through the legislative means of compact or the "federal common law" governing interstate controversies (*Hinderlider v. La Plata Co.*, 304 U. S. 92, 110), is the function and duty of the Supreme Court of the Nation. Of course every deference will be shown to what the highest court of a State deems to be the law and policy of its State, particularly when recondite or unique features of local law are urged. Deference is one thing; submission to a State's own determination of whether it has undertaken an obligation, what that obligation is, and whether it conflicts with a disability of the State to undertake it is quite another.

The Supreme Court of Appeals of the State of West Virginia is, for exclusively State purposes, the ultimate tribunal in construing the meaning of her Constitution. Two prior decisions of this Court make clear, however, that we are free to examine determinations of law by State courts in the limited field where a compact brings in issue the rights of other States and the United States.

*Kentucky* v. *Indiana,* 281 U. S. 163, dealt with a compact to build a bridge across the Ohio River. In an original action brought before this Court, Indiana defended on the ground that she should not be compelled to perform until the Indiana courts decided, in a pending case, whether her officials had been authorized to enter into the compact. Mr. Chief Justice Hughes, speaking for a unanimous Court, dismissed the argument: "Where the States themselves are before this Court for the determination of a controversy between them, neither can determine their rights *inter ·sese,* and this Court must pass upon every question essential to such a determination, although local legislation and questions of state authorization may be involved. *Virginia* v. *West Virginia,* 11 Wall. 39, 56; 220 U. S. 1, 28. A decision in the present instance by the state court would not determine the controversy here." 281 U. S. at 176–177.

In reaching this conclusion the Chief Justice could hardly avoid analogizing the situation to that where a question is raised whether a State has impaired the obligation of a contract. "It has frequently been held that when a question is suitably raised whether the law of a State has impaired the obligation of a contract, in violation of the constitutional provision, this Court must determine for itself whether a contract exists, what are its obligations, and whether they have been impaired by the legislation of the State. While this Court always examines with appropriate respect the decisions of state courts bearing upon such questions, such decisions do not detract from the responsibility of this Court in reaching its own conclusions as to the contract, its obligations and impairment, for otherwise the constitutional guaranty could not properly be enforced. *Larson* v. *South Dakota,* 278 U. S. 429, 433, and cases there cited." 281 U. S. at 176. And see *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95, 100.

*Hinderlider* v. *La Plata Co., supra,* is the second of these cases. It also makes clear, if authority be needed, that the fact the compact questions reach us on a writ of certiorari rather than by way of an original action brought by a State does not affect the power of this Court. In the *Hinderlider* case, an action was brought in the Colorado courts to enjoin performance of a compact between Colorado and New Mexico concerning water rights in the La Plata River. The State court held that the compact was invalid because it affected appropriation rights guaranteed by the ·Colorado State Constitution. 101 Colo. 73, 70 P. 2d 849; see also 93 Colo. 128, 25 P. 2d 187. Mr. Justice Brandeis, likewise speaking for a unanimous Court, held that the relative claims of New Mexico and Colorado citizens could be determined by compact and reversed the decision of the State court.

The issue in the *Hinderlider* case was whether the Colorado Legislature had authority, under the State Constitution, to enter into a compact which affected the water rights of her citizens. The issue before us is whether the West Virginia Legislature had authority, under her Constitution, to enter into a compact which involves delegation of power to an interstate agency and an agreement to appropriate funds for the administrative expenses of the agency.

That a legislature may delegate to an administrative body the power to make rules and decide particular cases is one of the axioms of modern government. The West Virginia court does not challenge the general proposition but objects to the delegation here involved because it is to a body outside the State and because its Legislature may not be free, at any time, to withdraw the power delegated. We are not here concerned, and so need not deal, with specific language in a State constitution requiring that the State settle its problems with other States without delegating power to an interstate agency. What

is involved is the conventional grant of legislative power. We find nothing in that to indicate that West Virginia may not.solve a problem such as the control of river pollution by compact and by the delegation, if such it be, necessary to effectuate such solution by compact. If this Court, in the exercise of its original jurisdiction, were to enter a decree requiring West Virginia to abate pollution of interstate streams, that decree would bind the State. The West Virginia Legislature would have no part in determining the State's obligation. The State Legislature could not alter it; it could not disregard it, as West Virginia on another occasion so creditably recognized. The obligation would be fixed by this Court on the basis of a master's report. Here, the State has bound itself to control pollution by the more effective means of an agreement with other States. The Compact involves a reasonable and carefully limited delegation of power to an interstate agency. Nothing in its Constitution suggests that, in dealing with the problem dealt with by the Compact, West Virginia must wait for the answer to be dictated by this Court after harassing and unsatisfactory litigation.'

What Mr. Justice Brandeis said of the Colorado court decision in *Hinderlider* v. *La Plata Co., supra,* applies to the decision of the West Virginia court: "It ignores the history and order of development of the two means provided by the Constitution for adjusting interstate controversies. The compact—the legislative means—adapts to our Union of sovereign States the age-old treaty-making power of independent sovereign nations. Adjustment by compact without a judicial or quasi-judicial determination of existing rights had been practiced in the Colonies, was practiced by the States before the adoption of the Constitution, and had been extensively practiced in the United States for nearly half a century before this Court first applied the judicial means in settling the boundary dispute in

*Rhode Island* v. *Massachusetts,* 12 Pet. 657, 723–25." 304 U. S. at 104.

The State court also held that the Compact is in conflict with Art. X, § 4, of the State Constitution and for that reason is not binding on West Virginia. This section provides:

> "No debt shall be contracted by this State, except to meet casual deficits in the revenue, to redeem a previous liability of the State, to suppress insurrection, repel invasion, or defend the State in time of war; but the payment of any liability, other than that for the ordinary expenses of the State, shall be equally distributed over a period of at least twenty years."

The Compact was evidently drawn with great care to meet the problem of debt limitation in light of this section and similar restrictive provisions in the constitutions of other States. Although, under Art. X of the Compact, the States agree to appropriate funds for administrative expenses, the annual budget must be approved by the Governors of the signatory States. In addition, Article V provides: "The Commission shall not incur any obligations of any kind prior to the making of appropriations adequate to meet the same; nor shall the Commission pledge the credit of any of the signatory States, except by and with the authority of the legislature thereof." In view of these provisions, we conclude that the obligation of the State under the Compact is not in conflict with Art. X, § 4 of the State Constitution.

*Reversed and remanded.*

Mr. Justice Black concurs in the result.

Mr. Justice Reed, concurring.

I concur in the judgment of the Court but disagree with the assertion of power by this Court to interpret the meaning of the West Virginia Constitution. This Court

must accept the State court's interpretation of its own Constitution unless it is prepared to say that the interpretation is a palpable evasion to avoid a federal rule.[1]

There is no problem concerning the binding effect upon this Court of state court interpretation of state law, under the Compact Clause such as there is under the clause against impairing the Obligation of Contracts.[2] Under the latter clause, this Court, in order to determine whether the subsequent state law, constitutional or statutory, impairs the federal prohibition against impairment of contracts, has asserted power to construe for itself the disputed agreement, to decide whether it is a contract, and to interpret the subsequent state statute to decide whether it impairs that contract.[3] Even then we accept state court conclusions unless "manifestly wrong."[4] Examination here, under the Contract Clause, is to enforce the federal provision against impairment and is made only to decide whether under the Contract Clause there is a contract and whether it is impaired.[5] This Court thus adjudges whether state action has violated the Federal Contract Clause. It does not decide the meaning of a state statute as applied to a state appropriation.

Under the Compact Clause, however, the federal questions are the execution, validity and meaning of federally approved state compacts.[6] The interpretation of the meaning of the compact controls over a state's application of its own law through the Supremacy Clause and not by any implied federal power to construe state law.

[1] *Union Pac. R. Co.* v. *Public Service Comm'n,* 248 U. S. 67.

[2] U. S. Constitution, Art. I, § 10.

[3] *Appleby* v. *City of New York,* 271 U. S. 364, 380; *King Mfg. Co.* v. *Augusta,* 277 U. S. 100, 114; *Coombes* v. *Getz,* 285 U. S. 434, 441.

[4] *Hale* v. *State Board,* 302 U. S. 95, 101.

[5] *Coolidge* v. *Long,* 282 U. S. 582, 597.

[6] *Delaware River Joint Toll Bridge Comm'n* v. *Colburn,* 310 U. S. 419, 428, where it is said, "Hence we address ourselves to the language of the Compact." And see the last paragraph of that opinion.

West Virginia adjudges her execution of the compact is invalid as a delegation of state police power and as a creation of debt beyond her constitutional powers. Since the Constitution provided the compact for adjusting interstate relations, compacts may be enforced despite otherwise valid state restrictions on state action.

This, I think, was the basis of our holding in *Hinderlider* v. *La Plata Co.,* 304 U. S. 92. The Supreme Court of Colorado held that compact invalid because it was an executive abandonment by Colorado of a citizen's previously acquired water rights, pp. 104 and 108. But we concluded:

> "Whether the apportionment of the water of an interstate stream be made by compact between the upper and lower States with the consent of Congress or by a decree of this Court, the apportionment is binding upon the citizens of each State and all water claimants, even ·where the State had granted the water rights before it entered into the compact." P. 106.

For that conclusion reliance was placed upon *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 725, where this Court, speaking of compacts, said:

> "By this surrender of the power, which before the adoption of the constitution was vested in every state, of settling these contested boundaries, as in the plenitude of their sovereignty they might; they could settle them neither by war, or in peace, by treaty, compact or agreement, without the permission of the new legislative power which the states brought into existence by their respective and several grants in conventions of the people. If congress consented, then the states were in this respect restored to their original inherent sovereignty; such consent being the sole limitation imposed by the constitution, when

> given, left the states as they were before . . . whereby their compacts became of binding force, and finally settled the boundary between them; operating with the same effect as a treaty between sovereign powers."

I would uphold the validity of the compact and reverse the judgment of West Virginia refusing mandamus, with direction to that court to enter a judgment not inconsistent with an opinion based upon the Supremacy Clause.

MR. JUSTICE JACKSON, concurring.

West Virginia officials induced sister States to contract with her and Congress to consent to the Compact. She now attempts to read herself out of this interstate Compact by reading into her Constitution a limitation upon the powers of her Governor and Legislature to contract.

West Virginia, for internal affairs, is free to interpret her own Constitution as she will. But if the compact system is to have vitality and integrity, she may not raise an issue of *ultra vires,* decide it, and release herself from an interstate obligation. The legal consequences which flow from the formal participation in a compact consented to by Congress is a federal question for this Court.

West Virginia points to no provision of her Constitution which we can say was clear notice or fair warning to Congress or other States of any defect in her authority to enter into this Compact. It is a power inherent in sovereignty limited only to the extent that congressional consent is required. *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 725; *Poole* v. *Fleeger,* 11 Pet. 185, 209. Whatever she now says her Constitution means, she may not apply retroactively that interpretation to place an unforeseeable construction upon what the other States to this Compact were entitled to believe was a fully authorized act.

36

Estoppel is not often to be invoked against a government. But West Virginia assumed a contractual obligation with equals by permission of another government that is sovereign in the field. After Congress and sister States had been induced to alter their positions and bind themselves to terms of a covenant, West Virginia should be estopped from repudiating her act. For this reason, I consider that whatever interpretation she may put on the generalities of her Constitution, she is bound by the Compact, and on that basis I concur in the judgment.