Grafton,
No. 5223.

DRESDEN SCHOOL DISTRICT

*v.*

HANOVER SCHOOL DISTRICT & *a.*

Argued February 5, 1964.
Decided March 18, 1964.

*Cotton, Tesreau, Stebbins & Johnson* (*Mr. S. John Stebbins* orally), for the plaintiff.

The defendants, pro se, furnished no brief.

KENISON, C.J. This is a petition for a declaratory judgment (RSA 491:22) by the plaintiff, an interstate school district, to determine whether (1) it is a validly established body corporate and politic, and (2) whether a vote adopted at its organization meeting places a legal obligation on the defendant, Hanover school district, to issue bonds pursuant thereto.

Hanover, New Hampshire and Norwich, Vermont are contiguous communities separated by the Connecticut River which is the state boundary. *Vermont* v. *New Hampshire*, 289 U. S. 593; RSA ch. 1. Previously high school pupils in Norwich attended the Hanover high school as tuition students. Increasing school population requires the construction of additional plant to accommodate Norwich. Under the general law of Vermont, Norwich is unable to contribute to Hanover's construction cost; under the general law of New Hampshire, Hanover is unable to give Norwich any voice in the operation of the schools. The dilemma has been resolved by the two communities by the creation of an interstate school district, entitled "Dresden School District" under the authority of N. H. Laws 1961, ch. 116, and No. 240 of the Acts and Resolves of the General Assembly of Vermont 1963, as amended. Annot. 134 A.L.R. 1411. *Cf.* Chermak, The Law of Revenue Bonds 69 (1954).

The joint plan is embodied in the two statutes, previously mentioned, which are substantially identical. It has been supplemented by articles of agreement covering certain authorized incidental matters. The plan has been approved by the Commissioners of Education of both states and has received the formal approval of the voters and school boards of Hanover and Norwich, the Secretaries of State and Attorneys General of both states, the Department of Justice, the Department of Health, Education and Welfare and the United States Congress. Public L. No. 88-177, 88th Cong.; 77 Stat. 332 (November 13, 1963). See also, Senate Judiciary Report, No. 616, 88th Cong., 1st Sess. (October 29, 1963).

The plan provides for the interstate school district to acquire and operate schools for both communities. Initially this will

include high school pupils only. The constituent districts (Hanover school district and Norwich town school district) will remain operative to conduct the lower grades in school and to finance Dresden. The voters of both communities are entitled to become eligible voters in Dresden. In general, funds are appropriated by Dresden, apportioned between the constituent districts by formula and raised by taxation, borrowing or state-aid under local law.

Dresden appropriated $738,500 for new school construction at its organization meeting December 10, 1963. Dresden requested Hanover to produce its proportionate share of $549,000. Hanover, although willing, could not market the bonds because bond counsel was unable to express an approving opinion as required by RSA 33:11 without a ruling by this court.

Today interstate compacts cover a wide variety of subjects, are in extensive use and are by no means confined to such traditional matters as bridges and boundaries. *Ham* v. *Interstate Bridge Authority*, 92 N. H. 268; *Dyer* v. *Sims*, 341 U. S. 22; Zimmermann & Wendell, The Law and Use of Interstate Compacts (Council of State Governments 1961); Frankfurter & Landis, The Compact Clause of the Constitution — A Study in Interstate Adjustments (34 Yale L. J. 685 (1925)); Thursby, Interstate Cooperation, ch. V (1953); Leach & Sugg, The Administration of Interstate Compacts, 212-229 (1959).

It is unnecessary for us to decide the large question whether the present compact required the consent of Congress under Article 1, section 10, clause 3 of the Constitution of the United States. The fact of the matter is that this local interstate experimental, educational project between Norwich, Vermont and Hanover, New Hampshire has complied with the necessary state and federal requirements in any event. These municipalities have sought and obtained authority to organize and operate the interstate Dresden school district from the legislatures of Vermont and New Hampshire, the necessary approval of the required executive officers of both states, the consent and votes of the voters and officers of the affected communities, and the consent of Congress. To the extent that *Virginia* v. *Tennessee*, 148 U. S. 503, 519; *Dover* v. *Portsmouth Bridge*, 17 N. H. 200 and *Ham* v. *Interstate Bridge Authority*, 92 N. H. 268, 270 indicate that congressional consent may not have been an absolute prerequisite, such consent provides an extra margin of

safety. To the extent that *Dyer* v. *Sims*, 341 U. S. 22, 27 indicates that congressional consent may have been necessary, it has been granted. Zimmermann & Wendell, The Law and Use of Interstate Compacts, ch. II (Council of State Governments 1961); Thursby, Interstate Cooperation, ch. III (1953); Celler, Congress, Compacts, and Interstate Authorities, 26 Law & Contemporary Problems 682 (1961); Leach, The Federal Government and Interstate Compacts, 29 Fordham L. Rev. 421 (1961).

Part I, Article 7th of the New Hampshire Constitution reads as follows: "[State Sovereignty.] The people of this state have the sole and exclusive right of governing themselves as a free, sovereign, and independent state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in congress assembled."

The question arises whether New Hampshire Laws 1961, ch. 116, authorizing the interstate Dresden school district, is a valid exercise of legislative authority. *Dutton* v. *Tawes*, 225 Md. 484, 500; *Dyer* v. *Sims*, *supra*. History, custom and past practices in this state permit the delegation of legislative authority to the extent authorized in this case. See *Opinion of the Justices*, 103 N. H. 268, 272; Fry, New Hampshire as a Royal Province 263 (1908); *St. Regis Co.* v. *Board*, 92 N. H. 164, 174-176.

There were certain formal, technical and procedural differences in the language of the Vermont and New Hampshire statutes. None of them can be considered substantial or of a nature to materially affect the execution of the joint interstate project. Recently the Vermont legislature amended its act on March 2, 1964 to make its legislation in substantial conformity with the New Hampshire act. See Vermont H. 21 (No. M-2), approved March 2, 1964, section 7 of which provides that the Vermont statutes "shall be construed as being consistent with chapter 116 of the New Hampshire Laws of 1961 in all material respects." While section 38 of the Vermont act provides that voting for bonds must be by ballot, and the corresponding New Hampshire act does not specifically make this requirement, the practice and procedure has been to vote by ballot in both states. This is not a substantial variation which would in any way affect the validity of the bonds. *Opinion of the Justices*, 344

Mass. 770.

We conclude that the Dresden school district is a validly established body corporate and politic, and the vote adopted by Dresden school district at its organization meeting places a legal obligation on the defendant, Hanover school district, to issue bonds pursuant thereto. *Hecker* v. *McKernan*, 105 N. H. 195, and cases cited. No other consideration or objection has been brought to our attention which would invalidate the proposed bond issue.

*Remanded.*

BLANDIN, J., did not sit; the others concurred.