**Lorraine YANCOSKIE, Administratrix of the Estate of Francis J. Yancoskie, et al.**

v.

**DELAWARE RIVER PORT AUTHORITY, Appellant.**

No. 75–1142.

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1975.

Reargued Nov. 17, 1975.

Decided Dec. 24, 1975.

Elizabeth M. McKenna, John J. O'Brien, Jr., O'Brien & O'Brien, Philadelphia, Pa., and Elliott Yampell, Haddonfield, N. J., for appellant.

Louis Samuel Fine and Robert A. Ebenstein, Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

While helping to construct a bridge linking the State of New Jersey with the Commonwealth of Pennsylvania, and being built for the Delaware River Port Authority ("Authority"), Francis J. Yancoskie fell to his death on the Pennsylvania side of the bridge. Lorraine Yancoskie, decedent's wife, who is a Pennsylvania resident, commenced this suit in

the United States District Court for the District of New Jersey on June 10, 1974. She sued as administratrix of decedent's estate, in her own right, and on behalf of her minor son, who is also a Pennsylvania resident. The complaint asserted a right to recover any and all damages they are entitled to receive "under any and all wrongful death or survival actions or under any other theory of law or recovery."

On September 20, 1974, defendant filed a motion to dismiss the complaint on the ground that there was no federal jurisdiction.[1] On December 4, 1974, the district court filed an opinion in which it denied the motion and held that there was federal jurisdiction. The rationale of the opinion was that, since the Authority was created by an interstate compact[2] pursuant to the Compact Clause of the Constitution,[3] the construction of the compact creating the Authority was a federal question.[4] From this, the district court concluded that there was federal jurisdiction, though the opinion did not specify the statute on which jurisdiction was based. Presumably the district court found jurisdiction on the basis of either 28 U.S.C. § 1331 or 28 U.S.C. § 1337.

On December 13, 1974, the district court amended the order to include a certification that "a controlling question of law as to which there is substantial ground for difference of opinion" was involved "and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." By order dated January 7, 1975, this court granted the Authority leave to appeal pursuant to 28 U.S.C. § 1292(b). The instant appeal is the result.

We hold that the district court was without jurisdiction, and we therefore reverse the denial of the defendant's motion to dismiss.

## I. Federal Question Jurisdiction

■ We note that the district court's holding that construction of an interstate compact presents a federal question is supported by Petty v. Tennessee-Missouri Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).[5] We need not decide this question here because even assuming, without deciding, the truth of that proposition, there is no federal jurisdiction in this case under § 1331 or § 1337. Section 1331 reads, in part:

1. The complaint failed to allege the existence of jurisdiction, though it appears that it attempted to allege facts sufficient to give the court diversity of citizenship jurisdiction under 28 U.S.C. § 1332. The existence or absence of § 1332 jurisdiction was the only jurisdictional issue briefed or argued by both parties before the district court.

   On June 24, 1974, defendant had filed an answer to the complaint alleging, inter alia, that (1) defendant is a public corporate instrumentality of Pennsylvania and New Jersey, (2) lack of subject matter jurisdiction due to the absence of diversity of citizenship, (3) sovereign immunity, (4) improper venue, and (5) the pendency of two civil actions based on the same cause of action, one in the U.S. District Court for the Eastern District of Pennsylvania at No. 72–2277 and the other in the Court of Common Pleas of Delaware County, Pa., at No. 1644 of 1973. The suit in the Eastern District of Pennsylvania appears to have been dismissed by stipulation of the parties.

2. Act of June 14, 1932, ch. 258, 47 Stat. 308, as amended, Act of July 17, 1952, ch. 921, 66 Stat. 738.

3. Art. I, § 10, cl. 3:
   "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State, or with a foreign Power . . . ."

4. App. at 46a. In support of this proposition, the district court relied on Petty v. Tennessee-Missouri Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The Court there stated: "The construction of a compact sanctioned by Congress under Art. I, § 10, cl. 3, of the Constitution presents a federal question." Id. at 278, 79 S.Ct. at 788. We note that there was a federal statutory basis for jurisdiction in Petty under the Jones Act, 46 U.S.C. § 688, whereas there is no such basis in this case.

5. See League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 507 F.2d 517 (9th Cir. 1974); Engdahl, Construction of Interstate Compacts: A Questionable Federal Question, 51 Va.L.Rev. 987 (1965).

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 . . . and arises under the Constitution, laws, or treaties of the United States."

The provision that the action be one which "arises under" the Constitution, laws, or treaties of the United States has long been held to mean that there is jurisdiction under this section

". . . only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit,

that is, the plaintiff's original cause of action, arises under the Constitution." *Louisville & Nashville R. R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). See *League to Save Lake Tahoe v. Tahoe Regional Plan. Agency*, 507 F.2d 517, 519–20 & n. 6 (9th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). Section 1337 also contains an "arising under" requirement,[6] which is interpreted to be the same as the § 1331 requirement. See *Peyton v. Ry. Express Agency*, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); *Springfield Television, Inc. v. City of Springfield*, 428 F.2d 1375, 1378 (8th Cir. 1970).

■ Nor is jurisdiction conferred by the existence in the compact of a "sue and be sued" clause,[7] although its construction might become crucial in this case.[8] This question of arguably federal law is not properly part of the plaintiff's statement of her own cause of action. Rather, it is an answer to an anticipated defense.[9] Therefore, the "sue and be

6. 28 U.S.C. § 1337 provides:
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ."

7. Act of June 14, 1932, ch. 258, 47 Stat. 308, 310, which provides, *inter alia:*
"For the effectuation of its authorized purposes, the Commission is hereby granted the following powers:

"(b) To sue and be sued. . . ."

8. An identical clause was interpreted in *Petty* to mean, as a matter of federal law, that the entity created by the compact waived any immunity from suit which it might have. 359 U.S. at 280, 79 S.Ct. 785.

9. In a companion case filed in the Court of Common Pleas of Delaware County, No. 1644 of 1973 (see second paragraph of note 1 above), the Authority contended that it was immune from suit. The court upheld the contention and dismissed the action. The Pennsylvania Superior Court affirmed the dismissal at No. 322, October Term 1975. The Supreme Court of Pennsylvania has granted allocatur, January Term 1976, No. 74. Should the Authority continue to prevail in the state courts, plaintiff could apply to the United States Supreme Court for a writ of certiorari under 28

U.S.C. § 1257(3). In *League to Save Lake Tahoe, supra*, the court pointed out at pages 520–21:

"The Supreme Court has, however, in a series of cases considered the status of interstate compacts in connection with its certiorari jurisdiction. See *Delaware River Comm'n v. Colburn*, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940); *Dyer v. Simms [Sims]*, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713 (1951). In these cases the Court addressed the question of whether a claim based on an interstate compact is cognizable under the provision for Supreme Court review, by writ of certiorari, of judgments of the highest state court where 'any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of * * * the United States.' 28 U.S.C. § 1257(3). In *Colburn* the Court unequivocally answered this question in the affirmative, holding that 'the construction of such a [bi-state] compact sanctioned by Congress by virtue of Article I, § 10, cl. 3 of the Constitution, involves a federal "title, right, privilege or immunity" which when "specially set up or claimed" in a state court may be reviewed here on certiorari under § 237(b) of the Judicial Code [the predecessor of § 1257(3)].' 310 U.S. at 427, 60 S.Ct. at 1041."

sued" clause did not make § 1331 or § 1337 applicable to this case.[10]

The mere fact that the bridge being constructed by the Authority is an instrumentality of interstate commerce is not enough to confer federal jurisdiction under § 1337. No federal law regulating or protecting commerce is part of plaintiff's cause of action, and therefore the "arising under" requirement of § 1337 has not been met.[11]

At oral argument plaintiff's counsel relied on another ground for finding federal question jurisdiction. He pointed out that the legislation approving the compact contained the following proviso:[12]

"Provided, That nothing herein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States or of any court, department, board . . . of the United States, over or in regard to navigable waters, or any commerce between the States, . . . or any bridge, railroad, highway, . . . forming the subject matter of the aforesaid compact . . . ."

Plaintiff contends that, since building a bridge between two states over an interstate waterway is a federal function which can be undertaken only with federal approval,[13] the above proviso requires that jurisdiction be determined as if the Federal Government were building the bridge. Jurisdiction in that case would exist, plaintiff argued, under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. and 28 U.S.C. § 1346(b), and therefore there is jurisdiction in this case.

We have concluded that this contention is without merit. The instant suit is not against the Federal Government, and the rationale for affording federal court jurisdiction over actions against the Federal Government has no application to this case. Moreover, the apparent purpose of the proviso is to prevent the statute granting congressional approval to the compact from being interpreted to limit federal power to regulate and protect commerce among the states. See *The Clinton Bridge*, 77 U.S. (10 Wall.) 454, 19 L.Ed. 969 (1870).

## II. *Diversity Jurisdiction*

Because of the district court's decision that federal question jurisdiction did exist, it did not reach the question of the existence of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Our contrary decision requires us to consider § 1332 as an alternate basis for federal jurisdiction here.

The Authority contends that it is an alter ego of the Commonwealth of Pennsylvania, citing *Appeal of Lillian Anderson*, 408 Pa. 179, 182 A.2d 514 (1962),[14] and therefore not a "citizen" of any state for purposes of diversity jurisdiction. In answer to this contention, the plaintiff relied on the financial independ-

---

10. Comment, *Federal Question Jurisdiction to Interpret Interstate Compacts*, 64 Geo.L.J. 87, 100–101, n. 82 (1975).

11. Building a bridge connecting two states over an interstate waterway is an activity clearly within the power of Congress to regulate under the Commerce Clause. There has been no assertion of that power by Congress to create a federal torts law applicable to the facts of this case. In the absence of such congressional action, and in light of the existence of state law remedies, we believe it would be entirely inappropriate for a federal court to infer the existence of such a federal torts law. See *Polansky v. TWA, Inc.*, 523 F.2d 332 (3d Cir., filed Sept. 9, 1975).

12. Act of June 14, 1932, ch. 258, 47 Stat. 308, 317.

13. The Compact Clause only requires congressional approval for agreements between states. Counsel have not cited any constitutional or statutory provision that requires federal approval for a private undertaking to construct such a bridge, and we have found no such provision.

14. This case in turn relied on *Rader v. Pennsylvania Turnpike Comm'n*, 407 Pa. 609, 182 A.2d 199 (1962), which has been reversed. *Specter v. Commonwealth*, Pa., 341 A.2d 481 (1975).

ence of the Authority from the state,[15] and argued that citizenship for diversity purposes is a federal, and not a state, question. See *Harris v. Pennsylvania Turnpike Comm'n*, 410 F.2d 1332, 1333 n. 1 (3d Cir. 1969).

We need not resolve this issue, however. In the compact, the Authority is referred to as a "body corporate and politic . . . which shall constitute the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey . . . ."[16] Further, the Supreme Court in *Petty* referred to a similar commission as a "bi-state corporation . . . a joint or common agency of Tennessee and Missouri." 359 U.S. at 279, 79 S.Ct. at 789. We conclude that for the purpose of determining the existence of diversity of citizenship jurisdiction the Authority, if it is not the alter ego of the state, should be treated as a corporation incorporated in both New Jersey and Pennsylvania. Section 1332(c) reads in part:

"For the purposes of this section . . ., a corporation shall be deemed a citizen of any State by which it has been incorporated . . . ."

Assuming, arguendo, that the Authority is not the alter ego of any state, we hold that the Authority is a citizen of both Pennsylvania and New Jersey, and since plaintiff is a citizen of Pennsylvania, there is no diversity of citizenship jurisdiction.[17]

Therefore, the district court order will be reversed and the case remanded so that the district court may enter an order of dismissal for want of subject matter jurisdiction.

Costs taxed against appellees.

---

15. See Act of June 14, 1932, ch. 258, Arts. VII & VIII, 47 Stat. 308, 314–15.

16. *Id.* at Art. I, 47 Stat. at 309.

17. The treatment of multi-state corporations for purposes of diversity of citizenship is not free from doubt. Prior to 1958, a corporation incorporated in several states, one of which was the forum state, probably was treated as a citizen only of the forum state. *Railway v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 283, 20 L.Ed. 571 (1871); *Seavey v. B & M R. R.*, 197 F.2d 485, 487 (1st Cir. 1952) (dictum). See also *Gavin v. Hudson & Manhattan Ry.*, 185 F.2d 104 (3d Cir. 1950). In 1958 Congress amended § 1332 by adding subsection c, the relevant portion of which is quoted in the text above. We hold that this 1958 amendment means that a multi-state corporation is deemed a citizen of every state in which it has been incorporated. *Accord, Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552 (E.D. Pa.), *aff'd*, 383 F.2d 986 (3d Cir. 1967); see 1 Moore's Federal Practice, ¶ 0.78[2]; Wright, Federal Courts, § 27 (2d ed.).