CALIFORNIA TAHOE REGIONAL PLANNING AGENCY; The California Department of Transportation; Resources Agency of the State of California; and People of the State of California, Plaintiffs,

v.

HARRAH'S CORPORATION; Douglas County, Nevada; Tahoe Regional Planning Agency, a political subdivision of the States of California and Nevada; Thomas Cooke, Kenneth Kjer, Harold Jacobsen, Jean Stoess, John Meder, James Henry, Norm Woods, James Burns and Dwight Steels, as members of the Governing Board of the Tahoe Regional Planning Agency, Defendants.

No. CIV–R–79–119–ECR.

United States District Court,
D. Nevada.

Feb. 3, 1981.

■

---

Daniel J. Taaffe, Deputy Atty. Gen., San Francisco, Cal., Joseph C. Easley, Bruce A. Behrens, California Dept. of Transportation, Sacramento, Cal., Joel S. Moskowitz, Deputy Atty. Gen., Sacramento, Cal., for Cal Tahoe Reg. Plan. Agency and People of the State of California.

Gary A. Owen, Shaw, Heaton & Doescher, Carson City, Nev., for defendants Tahoe Regional Planning Agency and Individual Board Members thereof.

Michael Smiley Rowe, Dist. Atty. for Douglas County, Minden, Nev., for defendant Douglas County.

Manoukian, Scarpello & Alling, Carson City, Nev., for defendant Harrah's.

## MEMORANDUM DECISION

EDWARD C. REED, Jr., District Judge.

This case involves the proposed construction of an eight level, 3,572-space parking garage by defendant Harrah's Corporation (Harrah's), on the south shore of Lake Tahoe in Nevada. Plaintiffs seek to enjoin the proposed construction.

The parties are presently before the Court on cross-motions for Summary Judgment or, alternatively, judgment on the pleadings.

Jurisdiction of the Court is based on federal questions, 28 U.S.C. § 1331(a), and the Court's pendent jurisdiction. Resolution of the case is substantially dependent upon the interpretation of 42 U.S.C. § 7410(a)(5)(A)(iii) and 42 U.S.C. § 7604(a) of the Clean Air Act. In addition, because plaintiffs allege that the actions of defendants Tahoe Regional Planning Agency (TRPA) and Douglas County (County) pursuant to the TRPA Land Use Ordinance will substantially affect the effective functioning of the Tahoe Regional Planning Compact (Compact), the Court has independent federal question jurisdiction to review such actions. *League to Save Lake Tahoe v. B. J. K. Corporation*, 547 F.2d 1072 (9th Cir. 1976).

## FACTUAL AND PROCEDURAL BACKGROUND

The present litigation finds its origins in a more basic controversy between the States of Nevada and California. The two have previously been at odds with each other over the extent to which future development is to be permitted in the Lake Tahoe basin.

In the hopes of compromising their divergent views, the states entered into an interstate compact, the Tahoe Regional Planning Compact, creating TRPA.[1] NRS 277.190, et seq., and Calif.Gov. Code § 66800, et seq. TRPA was given the power to "adopt and enforce a regional plan of resource conservation and orderly development." With voting members from both states on TRPA's governing board,[2] it was hoped that the interests and goals of both states could be protected and achieved. Unfortunately, since development is continuing in the Tahoe basin at a rate apparently more rapid

---

1. The Compact has the stated goals of insuring resource conservation, orderly development, and the protection of the environment of the Lake Tahoe basin. TRPA, the interstate agency created by the Compact, was directed to adopt and enforce a regional plan to achieve the Compact's goals. The agency was authorized to adopt "all necessary ordinances, rules, regulations and policies to effectuate the adopted regional and interim plans." (Article VI(a) of the Compact). Further, the cities and coun-

ties within the basin and the respective states were mandated to enforce all such ordinances, rules and regulations as adopted by TRPA. (Article VI(b)).

2. TRPA's governing board originally consisted of five members from each state. Of the five members, three represented local interests, one was appointed by the governor of the state and one was the administrator or director of the state agency dealing with natural resources.

than California interests desire, California has not been pleased with the results.

The controversy before the Court involves one of several cases in which California is attempting to halt development in the basin by the Nevada gaming industry. On July 24, 1978, defendant Harrah's filed an application with defendant County for a special use permit for the construction of an eight-level parking garage to accommodate 3,572 vehicles. Following public hearings on August 3, 1978, the County approved the project. The application, along with the County's record of its approval, was subsequently forwarded to TRPA for its review. TRPA returned the matter to Douglas County, however, because the County had not considered whether the proposed project was in compliance with TRPA's ordinance No. 78–5.[3] Thereafter, on October 19, 1978, Douglas County held a hearing. The County made findings that Harrah's proposed project was in compliance with ordinance No. 78–5, and again forwarded the application to TRPA for review.

On November 30, 1978, the TRPA governing body held a hearing on the question of compliance with section 3.10 of ordinance 78–5. At the conclusion of the hearing, a vote was taken on a motion to find the project in compliance. The TRPA vote did not achieve the required dual majority necessary to take action pursuant to Article III(g) of the Compact.[4] Pursuant to section 4.50 of ordinance No. 78–5,[5] the application was deemed to be in compliance with sec-

tion 3.10 of the ordinance and was scheduled for complete agency review at a subsequent TRPA meeting. On January 25, 1979, after the aforementioned self-effectuating expiration of ordinance 78–5, the TRPA approved the proposed Harrah's parking structure.

Shortly after this approval, that is, on February 20, 1979, the State of California and the California Tahoe Regional Planning Agency (Cal-TRPA) filed suit to enjoin the Harrah's projects. Plaintiffs' amended complaint, dated April 27, 1979, alleged thirteen claims for relief. The Court believes that the issues in controversy are properly raised by the cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and accordingly proceeds with their resolution.

*THE ISSUE RELATING TO TRPA ORDINANCE 78–5*

The First and Fourth Claims for relief in plaintiffs' amended complaint involve TRPA ordinance No. 78–5. In the First Claim, plaintiffs allege that Douglas County approved Harrah's permit applications in violation of said ordinance, while in the Fourth Claim they allege that TRPA approved the application in violation of the ordinance.[6] TRPA ordinance 78–5 was a temporary measure. 42 U.S.C. § 7410(a)(2)(I), a part of the Clean Air Act, requires states to adopt so-called nonattainment plans for the achievement of the national ambient air quality standard in their nonattainment areas as a precondition to

3. Section 3.10 of TRPA Ordinance 78–5 prohibited the issuance of any permits or entitlements to build if the proposed structure would generate more than 105 vehicle trips per day per acre of land included within a proposed development. Section 4.40 required that findings of compliance with section 3.10 be made before such application could be scheduled for complete agency review. Section 7 of the ordinance resulted in its self-effectuating repeal on January 1, 1979.

4. Article III(g) of the Compact states, "A majority vote of the members present representing each state shall be required to take action with respect to any matter . . . ." The Ninth Circuit Court of Appeals in *People of St. of Cal. ex rel. Younger v. Tahoe Reg. P. Agcy.*, 516 F.2d 215 (9th Cir. 1975), held this to mean that a majori-

ty vote by each state's delegation is required to take any action.

5. Section 4.50 of Ordinance 78–5 stated in pertinent part, "if the Governing Body shall fail to take action as defined in Article III(g) of the Tahoe Regional Planning Compact at said meeting, the application shall be deemed . . . in compliance with Section 3.10 . . . ."

6. TRPA Ordinance 78–5 required the permit issuing authority (Douglas County) and TRPA to make findings that the proposed parking structure would not create more than one hundred five (105) vehicle trips per day per acre of land included within a proposed development, before such a project could be approved.

the construction or modification of any major stationary source of pollution. (Nonattainment areas are those areas within a state which do not meet the minimum national ambient air quality standards set by the EPA.) Both the State of California and the State of Nevada designated those parts of the Tahoe basin within their respective states nonattainment areas. Pursuant to such designation, Governor O'Callaghan, then Governor of Nevada, named TRPA as the agency to prepare the required nonattainment plan for the portion of the Tahoe basin lying within the State of Nevada. Governor O'Callaghan requested that TRPA defer certain traffic-inducing projects from consideration for approval, pending completion of the plan. In response to his request, TRPA adopted Ordinance No. 78–5 on March 23, 1978. The ordinance placed a temporary moratorium on the construction of all projects that would result in the creation of more than 105 additional vehicle trips per day per acre of land within any particular development. All permit issuing authorities (e. g., Douglas County and TRPA) were required to make findings that a proposed construction would not result in such additional vehicle trips before any permit or entitlement to build could be granted. The ordinance, by its own terms, expired on January 1, 1979.

When the TRPA gave the Harrah's project final approval on January 25, 1979, ordinance 78–5 was no longer in effect. Plaintiffs in their points and authorities in support of a preliminary injunction admit that TRPA's action was correct if Douglas County's findings of October 19, 1978, were valid. They argue, however, that the County's findings were invalid, and that this in turn poisoned subsequent measures taken by TRPA.

■ The Court does not believe it necessary to review action taken by Douglas County two years ago with respect to a now expired ordinance. The ordinance was conceived as a clearly temporary restraint on major construction in the Tahoe Basin; by its own terms it expired on January 1, 1979. Whatever defects may have existed in the

Douglas County action were mooted by the expiration of ordinance 78–5 before TRPA had given its final approval of the Harrah's project.

Therefore, Summary Judgment in favor of defendants is proper with respect to plaintiffs' First and Fourth Claims for relief.

### THE ISSUE RELATING TO TRPA'S FAILURE TO SEEK CAL–TRPA'S APPROVAL BEFORE TAKING ACTION ON HARRAH'S PERMIT APPLICATION

Plaintiffs in their Third Claim for relief allege that TRPA acted arbitrarily and capriciously in approving Harrah's project without first having obtained Cal-TRPA approval. In support of this, plaintiffs claim that TRPA approval of the Harrah's project on January 25, 1979, was conditional upon Harrah's completion of the Loop Road project, and the Loop Road in turn required Cal-TRPA approval. Plaintiffs also cite sections of the California Government Code and the Cal-TRPA Land Use Ordinance which require in sum that the Harrah's project get required Cal-TRPA approval prior to consideration by TRPA.

Article VI(a) of the Tahoe Regional Planning Compact permits California and Nevada to adopt more stringent standards for land development in their own territories than those adopted by TRPA. Accordingly, it is within the power of California to adopt legislation requiring projects constructed in the California portion of the Basin to gain approval of the Cal-TRPA. However, there is no language in the Compact which allows either state to unilaterally impose its will on TRPA. California's legislation requires TRPA, according to plaintiffs, to refrain from approving any project in the California portion of the basin pending Cal-TRPA consent.

■ Absent language in the Compact reserving to California the right to impose such restrictions on TRPA's actions, it is precluded from doing so. One party to a compact " . . . may not enact legislation which would impose burdens upon the compact absent the concurrence of the other

signatories." *C. T. Hellmuth v. Washington Metro. Area Trans.*, 414 F.Supp. 408, 409 (D.Md.1976). *See also, Dyer v. Sims,* 341 U.S. 22, 28, 71 S.Ct. 557, 560, 95 L.Ed. 713 (1951). *Delaware River & B. Auth. v. New Jersey,* 112 N.J.Super. 160, 270 A.2d 704, 707 (1970). *Brown v. Bowles,* 254 Md. 377, 254 A.2d 696, 699 (1969). Therefore, because California could not require TRPA to in effect seek California's approval before acting, TRPA was not acting arbitrarily when it approved the project. Accordingly, summary judgment in favor of defendants is proper with respect to plaintiffs' Third Claim for relief.

### THE ISSUE RELATING TO LUO 8.33

Plaintiffs' Second and Fifth Claims for relief allege violations of TRPA's Land Use Ordinance section 8.33 on the part of TRPA and Douglas County. The ordinance requires a permit-issuing authority to make findings that the use for which a permit is sought will not be injurious to persons, property or the environment in the neighborhood of the planned use.[7] Plaintiffs claim that neither Douglas County nor TRPA made the required findings with respect to the Harrah's parking garage complex.

▇ In reviewing the findings of TRPA, it is not the function of the Court to weigh the considerable amount of conflicting evidence received by the administrative bodies. The Court's primary function in reviewing the agency's findings is to determine whether there was substantial evidence to support them. *See Simeon Management Corp. v. F.T.C.,* 579 F.2d 1137, 1142 (9th Cir. 1978). In addition, because a dual majority of the TRPA board made the 8.33 findings on its *de novo* review, if the Court concludes that there was substantial evidence for TRPA's findings, it will not be required

to reach the question of whether Douglas County made such findings. We must therefore proceed to examine the question of whether there was in fact substantial evidence to support TRPA's findings.

Although California presented to the TRPA board impressive evidence supporting the position that the Harrah's project will not meet the requirement of Section 8.33, the board also received a great deal of evidence tending to show that the project is environmentally sound.

A study prepared and submitted to the TRPA board by Dr. John E. Glab, a civil engineer working for Creegan & D'Angelo, consulting engineers, concluded that the Harrah's project would benefit traffic movement (on Highway 50 and side streets, as well as within Harrah's property), vehicle emissions, fuel economy, safety, and customer convenience.

Dr. Glab's study found that the presence of several pedestrian-activated traffic signals on Highway 50 at Stateline, the existence of a number of casinos and casino-hotels immediately north of Harrah's and the large number of business establishments along Highway 50 south of Harrah's constituted negative factors to traffic movement in that turning movements into and from parking lots hold up vehicle circulation. In addition Dr. Glab's study found that existing parking facilities were insufficient to meet present parking demands for Harrah's and nearby casinos. This, in turn, resulted in a great many vehicles circulating through the lots waiting for vacant spaces.

The study concluded that if "stop-and-go circulation within the parking areas could be greatly reduced; if turning movements could be reduced onto and off of Highway 50; and if the number of miles of operation spent in cruising around the parking lot could be fractionalized, both emissions and fuel consumption could be reduced."

7. Section 8.33 of the TRPA Land Use Ordinance states in pertinent part: "Administrative permits may be ... granted only if it is found by the permit-issuing authority that the establishment, maintenance, or operation of the use ... in the particular case is not (1) detrimental to health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use; (2) or detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the Region, (3) and will not cause any substantial harmful environmental consequences on the land of the application or on other lands or waters." [numbering added]

The study also found that the parking garage would lead to more orderly traffic to and concentration of pedestrian movements in protected routes, thereby promoting safety for all travelers in the area. Aesthetically, it was noted that the proposed garage would remove approximately 1,179 ground-level parking spaces and permit more than four additional acres to be converted to open space.

In the summer of 1978, members of the firm of Cook Associates, Engineering Consultants, undertook a study of the proposed Harrah's project. Based on their investigations and analysis utilizing Environmental Protection Agency techniques, they concluded that "Harrah's parking structure as proposed, will unto itself provide for air quality betterment in the vicinity of Harrah's Club at Lake Tahoe."

George M. Thiel, an Environmental Specialist for the Nevada Division of Environmental Protection (Air Quality Section), also prepared a report for the Tahoe Regional Planning Agency. Mr. Thiel reached the conclusion, based on reasonable scenarios, that the construction of the proposed parking garage could result in improved air quality conditions at the South Shore area of Lake Tahoe in both Nevada and California.

Two Nevada Department of Highway's engineers, George B. Westenhoefer and Joseph A. Souza, reported to TRPA that the proposed parking garage would result in no additional trip generation and that traffic and customer convenience and safety could be better facilitated by a parking garage than by acres of open space parking. Mr. Souza stated that it was the casino-hotel that was the traffic generator and not the parking garage.

The TRPA board also had before it statements from Sierra Pacific Power Company, Douglas County Sewer Improvement District, the Lake Tahoe Fire Protection District and the State of Nevada Department of Highways, all stating that with respect to their areas of interest the Harrah's project did not present any major obstacles.

On this record, the Court concludes that the TRPA board had substantial evidence to support its 8.33 findings. Therefore, it finds summary judgment in favor of defendants is proper with respect to plaintiffs' claim that TRPA did not make legitimate 8.33 findings. The board's review having been *de novo*, the Court need not determine whether Douglas County acted correctly, and summary judgment should be entered in favor of defendants on this issue also. *See California Tahoe Regional Planning Agency v. Jennings*, 594 F.2d 181, at ftnt. 10 (9th Cir. 1979).

### THE ISSUE RELATING TO NEPA

In their Tenth Claim for relief plaintiffs assert that TRPA is an agency which must comply with the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq. The Court has previously ruled in a Memorandum Decision entered in *Cal-TRPA v. Sahara Tahoe Corp. et al.*, 504 F.Supp. 753 (D.Nev.1980) that TRPA is not subject to NEPA. A copy of said Memorandum Decision is attached hereto and incorporated herein by this reference. For the reasons set forth on pages 762–764 thereof, the Court here rejects plaintiffs' contention to the contrary and finds Summary Judgment in favor of defendants proper on this issue.

### THE ISSUE RELATING TO CEQA

Plaintiffs allege in their Eleventh Claim for relief that TRPA is a political subdivision of the State of California and as such is an agency which is required to comply with the provisions of the California Environmental Quality Act (CEQA). Cal.Pub.Res. Code §§ 21000–21176 (West 1977). Compliance with CEQA would require TRPA to prepare an environmental impact report detailing the significant environmental effects, mitigation measures and alternatives to the project. Cal.Pub.Res.Code § 21100. Further, TRPA would be required to mitigate or avoid any significant effects on the environment which the EIR discloses, if it is feasible to do so. Cal.Pub.Res.Code § 21002.1. This Court has previously reject-

ed California's claim that CEQA applies to TRPA action with respect to construction projects in Nevada. However, there is authority for the position that California has the right to impose CEQA requirements on TRPA when the proposed project lies in California.

In *The People of the State of California v. City of South Lake Tahoe*, 466 F.Supp. 527 (E.D.Cal.1978), Judge Peckham held that CEQA could be applied to TRPA's consideration and approval of the portion of the loop road project within California. Judge Peckham expressly rejected TRPA's contention that the application of CEQA would give California power to unilaterally impose its will on the bi-state agency:

"While CEQA requires that major consideration be given to preventing environmental damage, it recognizes that public agencies also have the obligation to consider economic and social factors in determining whether and how a project should be approved. Accordingly, a proposed project that would have a significant effect on the environment can be approved and carried out notwithstanding that specific economic, social, or other considerations make mitigating measures or project alternatives infeasible if the agency states in writing the reasons which support its actions and if these reasons are supported by the final EIR and other information in the record. Cal. Pub.Res.Code § 21002 (West 1977); 14 Cal.Adm.Code §§ 15088, 15089, Reg. 78, No. 5 (1978). Thus applying CEQA to TRPA would not give California the power to overrule TRPA." 466 F.Supp. at 537.

The Court is inclined to agree with Judge Peckham's analysis, but only to the extent that the proposed project falls within California boundaries. That is, the EIR required by CEQA should only examine the actual impact on California of that portion of the project that lies within California as distinguished from studying the impact of the project as a whole.

Uncontradicted facts in defendants' affidavits support defendants' claim that only 2.2 acres of the total 26.4 acre project is actually located within California. The only involvement of the California land in the proposed project is to permit the installation of a landscaped infiltration ditch for drainage. The landscaping will replace presently paved surface. The CEQA EIR should therefore be limited to the effects of the drainage from the project, the change in surface use, and the effect of the construction work itself on the California environment.

■ Accordingly, to the extent set forth, the Court finds that TRPA is subject to the requirement of CEQA and therefore summary judgment in favor of plaintiffs is proper on this issue. If the entire construction project were in Nevada, a different result would be reached.

*THE ISSUE RELATING TO HARRAH'S ALLEGED FALSE MISREPRESENTATION TO TRPA*

In plaintiffs' Twelfth Claim for Relief they allege that Harrah's falsely represented to TRPA that it had no expansion plans for its casino-hotel at the South Shore other than those plans for the parking garage. This alleged misrepresentation, plaintiffs claim, resulted in TRPA improperly assessing the impacts of the proposed project under its ordinance No. 78–5 and its Land Use Ordinance Section 8.33.

The circumstances which have given rise to these allegations are not stated with particularity. The only ultimate facts alleged are found in paragraph 52 of the First Amended Complaint. "Plaintiffs are informed and believe and thereon allege that defendant HARRAH'S representation that it has no casino-hotel expansion plans is false and that HARRAH'S does have plans to develop additional casino and/or hotel facilities at its site on the South Shore."

The credibility of the witnesses was a matter to be considered by the members of TRPA. The administrative record does not support the contentions of false representations. Nor does the file in this case hint that evidence of such misrepresentation is

now available that was not equally available at the time TRPA was deciding whether to approve the project.

The Court therefore finds Summary Judgment in favor of defendants proper on this issue.

### THE ISSUE RELATING TO PROSPECTIVE NUISANCE

■ In their Thirteenth Claim for Relief, plaintiffs allege that the Harrah's parking garage constitutes a prospective nuisance. The Court has previously ruled on that issue with respect to the proposed Sahara Tahoe Corp. parking garage in the same vicinity. In *Cal-TRPA v. Sahara Tahoe*, 504 F.Supp. 753 (D.Nev.1980) the Court ruled that because there was conflicting evidence as to the environmental merits of the proposed structure it was bound by the holding in *California Tahoe Regional Planning Agency v. Jennings*, 594 F.2d 181 (9th Cir. 1979) to enter Summary Judgment in favor of defendants. For the same reasons as set forth, 504 F.Supp. at p. 765, of the *Sahara* memorandum decision, the Court finds Summary Judgment for defendants proper with respect to the prospective nuisance issue.

### THE ISSUE RELATING TO HARRAH'S FAILURE TO OBTAIN AN AIR REGISTRATION CERTIFICATE

Plaintiffs' Sixth Claim for Relief asserts that Douglas County and TRPA were in violation of Nevada's Air Quality Regulations in approving Harrah's project prior to the issuance of a valid Air Registration Certificate (ARC).[8] In their Seventh Claim, plaintiffs allege that the commencement of construction of Harrah's project without first obtaining such Registration Certificate as required by the Nevada SIP, as approved by the EPA, would be a violation of emission standards or limitations within the

meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(1) and therefore should be enjoined.[9] Under § 7604(a)(1), any person may bring a civil action to enjoin the violation or prospective violation of an emission standard or limitation.

■ The Court has previously ruled on these issues with respect to Sahara Tahoe Corp.'s proposed parking garage in the same vicinity. Because the relevant law is the same, the Court hereby incorporates by reference its holdings on this issue found in the *Sahara* case, *Cal-T.R.P.A. v. Sahara Tahoe Corp.*, 504 F.Supp. 753 at pp. 765–769 (D.Nev.1980). Accordingly, until such time as Harrah's obtains a valid Air Registration Certificate, or until such time as one is no longer required, Harrah's must be enjoined from constructing its parking garage. Yet, the motions for summary judgment based on the failure to obtain an ARC shall be retained under advisement for a reasonable time to allow the Administrator of the Environmental Protection Agency to act, or for proceedings to be initiated to enforce him to act, as discussed on page 769 of 504 F.Supp.

A partial summary judgment, preliminary injunction and order shall be prepared in accordance with the foregoing.

---

8. Section 3.2.2 of the Nevada Air Quality Regulations requires that a valid registration certificate be obtained prior to the construction or alteration of any complex source. Section 13.-1.3 prohibits the issuance of such a certificate if it is determined that the complex source will prevent the attainment and maintenance of the State and national air quality standards.

9. 42 U.S.C. § 7604(a) provides in pertinent part: "... any person may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an emission standard or limitation ..."