**DELTA SERVICES AND EQUIPMENT, INC., Plaintiff–Appellant,**

v.

**RYKO MANUFACTURING COMPANY, Defendant–Appellee.**

No. 89–3790.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1990.

Phillip A. Wittmann, Alex J. Peragine, Sarah S. Vance, Stone, Pigman, Walter, Wittman & Hutchinson, New Orleans, La., for plaintiff-appellant.

William Forrester, Thomas M. Keiffer, Lemle & Kelleher, New Orleans, La., for defendant-appellee.

**8**

Before CLARK, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Delta Services and Equipment, Inc. (Delta) appeals the district court's order granting summary judgment in favor of Ryko Manufacturing Company (Ryko) and allowing Ryko to terminate its distributorship agreement with Delta. We affirm.

### I.

Beginning in June 1979, Delta became the exclusive distributor of Ryko vehicle wash equipment in Louisiana. In 1983, relations between Delta and Ryko began deteriorating. After a dispute developed over the commission rate for certain accounts, Ryko filed suit in federal district court in Iowa alleging that Delta had breached the agreement by allowing one of its principals to leave the company. Ryko sought termination of the agreement. Delta counterclaimed alleging, among other things, fraud, antitrust violations and racketeering. The Iowa district court rejected Ryko's suit and held that a 1979 amended agreement was in effect which authorized the principal to leave. The court also dismissed Delta's counterclaims as meritless.

Sometime after the Iowa judgment became final, Ryko notified Delta that Ryko intended to terminate the agreement with Delta. Delta filed a complaint seeking declaratory and injunctive relief to prevent the termination. In April 1989, the district court issued a temporary restraining order prohibiting termination, and Ryko later agreed that it would not terminate the agreement during the pendency of the district court litigation. In November 1989, the district court granted Ryko's motion for summary judgment, holding that, under Iowa law, the agreement was one of indefinite duration and, therefore, terminable at will upon reasonable notice. The district court further held that six months provided Delta with adequate notice and set May 15, 1990 as the date on which Ryko could terminate the agreement.

This panel stayed the district court's judgment pending further order of this court. By our order of June 5, 1990, we lifted that stay.

### II.

### A.

The primary issue in this case is whether the agreement between Ryko and Delta is one of indefinite duration. Iowa's version of the U.C.C., which is taken directly from § 2–309 of the model code governs this dispute. It states, in part:

(2) Where the contract provides for successive performances but is *indefinite in duration* it is valid for a reasonable time but UNLESS OTHERWISE AGREED may be terminated at any time by either party.

(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

Iowa Code Ann. § 554.2309(2), (3) (emphasis added). According to these two subsections a contract is terminable at will upon reasonable notice unless a provision in the contract makes it a contract of definite duration.[1]

---

1. The agreement includes the following termination provisions:

V. *TERMINATION PROVISIONS.*

A. Either party may terminate this agreement upon written notice effective immediately in event of either party defaulting in the performance of any of the terms or conditions of this contract.

B. Distributor shall be subject to termination in the event that the Distributor's sales volume does not attain the level of 2 (two) Ryko inbay rollover car washes per

yearly quarter or 4 (four) units semi-annually.

C. Upon termination of this contract, Distributor shall immediately return to the Company all current sales and promotional equipment, supplies, literature, manuals, aids and data of all kinds and nature, pertaining to the Company's product. This will be done at Distributor's expense and if approved credited to Distributor's account from the final billing.

■ Delta argues that, because the agreement provides for termination upon the occurrence of a specified event, i.e., failure by Delta to maintain sales volumes at a specified level, the contract is not indefinite in duration. Delta also contends that the provision authorizing termination upon a breach of the agreement indicates that the parties have otherwise agreed that the contract is not terminable at will. This type of provision, that would have been implied if not stated in the contract, clearly does not support this inference. The Official Comments to § 2–309 state that "[j]ustifiable cancellation for breach is a remedy for breach and is not the kind of termination covered by [§ 2–309]." *See* Iowa Code Ann. § 554.2309, Historical Notes, Uniform Commercial Code Comment No. 9. Therefore, the only termination provision that arguably supports the inference that the parties did not intend to enter into a contract that was terminable at will is paragraph B relating to minimum sales.

Delta relies primarily on *Besco Inc. v. Alpha Portland Cement Co.*, 619 F.2d 447 (5th Cir.1980), to support its argument that this agreement is terminable upon the occurrence of a specified event and is therefore not terminable at will. In *Besco*, the contract gave the plaintiff-distributor the exclusive right to purchase the defendant's product as long as the distributor sold a specified amount annually. The pertinent clause of the contract provided:

> The right of [the manufacturer] to withdraw the exclusive right to purchase for said agricultural purposes *shall be based solely on* (1) either the failure of [the distributor] to dispose of at least 20,000 tons of this material annually or (2) upon the unavailability of the material due to its use in the cement manufacturing process at [manufacturer's] plant.

*Id.* at 448. The court held that this provision brought the contract within the category of those in which the parties "otherwise agreed" to limit termination rights within the meaning of § 2–309. We agree with Ryko, however, that the language in

the *Besco* contract is distinguishable from the Delta–Ryko contract because the *Besco* contract explicitly stated that termination would be allowed *only* upon the happening of specified events.

Delta further contends that the contract must be read as a whole and when it is read in this light the specific termination provisions are meaningless if the contract is terminable at will. Relatedly, Delta argues that the provision requiring Delta's principals to continue active participation for one year was unnecessary if the contract was terminable at will. Ryko takes comfort in the permissive language of the termination provision which states that, upon the occurrence of one of the specified events, Ryko "may" terminate the agreement "immediately." Ryko reads this language in the termination clause as defining when Ryko may, at its discretion, terminate at once and without reasonable notice. Ryko argues that such clauses allowing immediate termination for cause are not incompatible with a contract of indefinite duration allowing termination at will upon reasonable notice. Ryko, therefore, contends that the termination provisions are insufficient to transform the agreement into one of definite duration.

Ryko relies on a number of cases to support its position; but, like those cited by Delta, none control the outcome of this case. Ryko correctly argues that this circuit presumes that a contract is terminable at will and does not favor perpetual contracts. As we stated in *Besco*, "the construction of a contract conferring indefinite duration is to be avoided *unless compelled by the unequivocal language of the contract*." 619 F.2d at 449, *citing Southern Bell v. Florida East Coast Ry. Co.*, 399 F.2d 854, 858 (5th Cir.1968).

■ Ryko also relies on *Wilcox & Gibbs v. Ewing*, 141 U.S. 627, 635–36, 12 S.Ct. 94, 96–97, 35 L.Ed. 882 (1891) to support its position. In *Wilcox*, a pre-U.C.C. case, the Court held that a provision in the contract

---

D. Company shall prepare a final statement supported by invoices to the Distributor by regular mail. Distributor shall pay

such statement within 30 days of the date of the statement.

stating that the agreement could be terminated if either party violated the spirit of the agreement did not mean that the contract could only be terminated for cause. Therefore, the Court concluded that even though the contract could be terminated for cause upon a violation of its spirit it was nevertheless terminable at will upon notice. Justice Harlan explained that very explicit provisions would be required to remove the manufacturer's ability to terminate the contract at will:

If Ewing had the privilege, upon reasonable notice, of severing the connection between him and the company after 1875, upon what ground could a like privilege be denied the company if it desired to dispense with his services? He contends that his life, or the continuance of the company in business, was the shortest duration of the contract, consistent with its provisions, provided he did his duty. This position is untenable. His appointment was made and accepted subject to the conditions expressed in the agreement. *No one of those conditions is to the effect that so long as he devoted his time, attention and abilities to the company's business, he should retain his position as its exclusive vendor, within the territory named, without regard to its wishes. If the parties intended that their relations should be of that character, it was easy to have so stipulated.* The only part of the contract that gives color to the theory for which the plaintiff contends, is the part declaring that a violation of the spirit of the agreement "shall be sufficient cause for its abrogation." This clause, it may be suggested, was entirely unnecessary if the parties retained the right to abrogate the contract after 1875, at pleasure, and implies that it could be abrogated only for sufficient cause, of which, in case of suit, the jury, under the guidance of the court as to the law, must judge in the light of all the circumstances. We cannot concur in this view. *The clause referred to is not equivalent to a specific provision declaring, affirmatively that the contract should continue in force, for a given number of years, or without limit as to time, unless abro-*

*gated by one or the other party for sufficient cause.* It was inserted by way of caution, to indicate that the parties were bound to observe equally the spirit and the letter of the agreement while it was in force.

*Id.* at 635–36, 12 S.Ct. at 97 (emphasis added). Delta, with justification, distinguishes the *Wilcox* contract on grounds that it did not contain a provision stating that it was terminable upon a specific occurrence (such as low sales volume), as the Delta–Ryko agreement does. Even though this contract language is distinguishable, we agree with Ryko that the opinion has value for its clear statement of the policy reasons for the presumption against perpetual contracts. Delta also argues that Wilcox has no application because it was decided long before the UCC was adopted. We are persuaded that the case is not rendered inapplicable for that reason. U.C.C. § 2–309(2) is a codification of the common law rule that unless otherwise stated, a contract is terminable at will upon reasonable notice. *Blalock Machinery v. Iowa Mfg. Co.,* 576 F.Supp. 774, 778 n. 3 (N.D.Georgia 1983) (Iowa law).

Ryko further contends that the district court properly relied on *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129, 134, *reh'g denied,* 597 F.2d 772 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979), for the proposition that when there is a "soured relationship" and there is no explicit agreement to continue performance, the contract is terminable at will. In *Corenswet,* as in this case, an exclusive distributor brought suit to prevent the manufacturer from terminating the business relationship. But, we agree with Delta that *Corenswet* is distinguishable because, unlike the Delta–Ryko agreement, the *Corenswet* contract expressly stated that it was terminable "at any time."

Ryko also points out that another circuit has addressed the issue at hand as a matter of general contract law. The court in *Martin v. Equitable Life Assur. Soc. of U.S.* explained that the existence of specific

termination provisions does not necessarily make a contract one of definite duration.

The implication invoked that the contract was not terminable at will, because it contained clauses, unnecessary if it was so terminable, specifying causes for its termination, is too feeble to withstand the compelling force of the presumption that the plaintiffs could not have intended to surrender control of their own business and services for life, and the defendant could not have intended to surrender its right or to limit the exercise of its right to manage, control, continue, or terminate its business of insurance at will.

553 F.2d 573, 575 (8th Cir.1977), *citing Moore v. Security Trust & Life Ins. Co.,* 168 F. 496, 500 (8th Cir.1909), *cert. denied,* 219 U.S. 583, 31 S.Ct. 469, 55 L.Ed. 346 (1910).

None of the cases cited by the parties is on all fours with this case. For example, the termination provisions in the Delta–Ryko agreement are not as exclusive as those in *Besco* (termination allowed *only* upon a stated event) nor are they as broad as those in *Corenswet* (termination allowed at any time). Our own review of the case law also provides little guidance.[2]

Although authorities on § 2–309 are sparse as to when a contract is considered indefinite, strong policy reasons support the presumption in favor of interpreting the contract as one of indefinite term. First, common sense tells us that parties ordinarily do not intend to maintain their business relationships forever. Second, one of the important goals of the UCC—to promote mutually beneficial business dealings—is not fostered if the parties are required to remain in the business relationship after it has soured. *See Corenswet,* 594 F.2d at 138 ("[Termination at will] clauses have the salutary effect of permitting parties to end a soured relationship without consequent litigation.")

Delta argues that acceptance of such a policy will encourage manufacturers to enlist the assistance of distributors, require them to invest money and time to promote the product and then terminate the contract before the distributor has recouped its investment or earned a fair profit for its efforts. We are persuaded that these fears are unfounded. A manufacturer could not terminate the contract if this rendered the contract unconscionable. *See Corenswet,* 594 F.2d at 138, 139 nn. 11, 12; Uniform Commercial Code § 2–309(3) (a waiver of notice of termination will not be enforced if it is unconscionable). Also, § 2–309 states that if no duration is stated the contract "is valid for a reasonable time." Under pre-U.C.C. law, courts concluded that, even distributorships of indefinite duration must remain in force for a period ascertained to be a reasonable time and, until that time expired, they could only be terminated for cause; after the expiration of a reasonable time, they could be terminated at will upon reasonable notice. *See* Annot., 19 ALR 3d 196 §§ 17, 22 (1968) and cases cited therein. The length of time the distributor requires to recover its investment and a reasonable profit is one of the factors the courts consider in arriving at a "reasonable" time. *Id.* at § 22 p. 351, *citing J.C. Millett Co. v. Park & Tilford Distillers Corp.,* 123 F.Supp. 484 (D.C.Cal. 1954); *See also* S. Williston, *Williston on Contracts* § 1017A at 150–51 (3d ed. 1967); *W.K.T Distributing Co. v. Sharp Electronics,* 746 F.2d 1333, 1335–36 (8th Cir. 1984) (opportunity for recoupment required where the contract is terminable at will).

---

**2.** *See, e.g. American Bronze Corp v. Streamway Products,* 8 Ohio App.3d 223, 456 N.E.2d 1295 (1982) (a contract for production of a specific number of units is not indefinite in duration); *Panhandle Agri–Service, Inc. v. Becker,* 231 Kan. 291, 644 P.2d 413 (1982) (a contract for the sale of a definite amount of hay during a crop year is not indefinite in duration even though the contract was extended to the next year because of a crop shortage); *Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687 (Minn.App.1987) (letter agreement contained no express or implied duration term therefore the agreement was of indefinite duration); *Parker Marking Systems v. Diagraph–Bradley Ind.,* 80 N.C.App. 177, 341 S.E.2d 92, 94, *review denied,* 317 N.C. 336, 346 S.E.2d 502 (1986) (grant of summary judgment reversed because conflicting affidavits created material issues of fact regarding whether the parties had "otherwise agreed" regarding termination rights).

Finally, the reasonable notice requirement has considerable flexibility which helps to avoid inequitable results. "Subsection (3) [of § 2–309] recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement." Iowa Code Ann. § 554.2309, Historical Notes, Uniform Commercial Code Comment No. 8.

The question we must decide is whether the termination clause permitting Ryko to immediately terminate the contract if Delta did not meet its sales quota is sufficient to rebut the presumption that the contract was terminable at will. We conclude that it does not. The fact that the contract states limited grounds for immediate termination, does not transform it to one of definite duration because this is not the "unequivocal language" required by *Besco*, 619 F.2d at 449. The contract, therefore, has an indefinite term and was subject to termination upon reasonable notice.[3] Delta does not challenge the reasonableness of the notice and we conclude that the district court did not err in holding that by May 15, 1990 Delta had received reasonable notice.

### B.

Delta argues next that the district court should have declined summary judgment and considered parol evidence at a trial. Citing statements made by Ryko's president, Delta argues that Ryko clearly intended to be bound by the agreement as long as Delta performed. Delta contends that Ryko obviously did not consider the agreement terminable at will in 1983 when Ryko sought a judgment declaring its contract with Delta void because of Delta's breach.

▬▬ Under Iowa law, we may consider parol evidence which adds to, varies or contradicts the express terms of the written contract if the written contract is ef-

fected by fraud, accident, or mistake. *Yoder v. Nutrena Mills, Inc.*, 294 F.2d 505, 513 (8th Cir.1961), *citing Williams v. Williams*, 251 Iowa 260, 100 N.W.2d 185 (1959). Delta argues that parol evidence is admissible where the "language is fairly susceptible to two interpretations." *Farm Bureau Mut. Ins. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981). We conclude that, for the reasons stated above, the Delta–Ryko agreement is not "fairly susceptible to two interpretations" and is not ambiguous.

Delta does not argue that the contract is effected by a vice of consent and we decline to look beyond the terms of the written contract.

### C.

After briefing was completed, Delta filed documents under Fed.R.App.Pro. 28(j) regarding an Iowa U.S. District Court's denial of Ryko's motion for summary judgment against another distributor, Eden Services, a party not involved in the case at hand. *See Ryko Manufacturing Company v. Eden Services*, No. 83–70–E (S.D.Iowa March 1, 1990). Ryko filed a motion to strike because Delta's filing exceeded the bounds of Rule 28(j). Because of our disposition of this issue, we need not address whether Delta's filing violated Rule 28(j).

In the *Eden* case, Ryko also attempted to terminate a distributorship agreement. Although an Iowa district court's interpretation of Iowa law should receive deference, *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1101 n. 19, *reh'g denied*, 849 F.2d 901 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988), the Iowa district court did not address the issue presented in this case.

In the initial Ryko–Eden suit Ryko sought a declaratory judgment that Eden had breached its agreement with Ryko; Eden countersued alleging antitrust violations, breach of contract and fraud. The

---

**3.** Delta argues that, because Ryko drafted the agreement, ambiguities must be resolved in favor of Delta. *Interpetrol Bermuda Limited v. Kaiser Aluminum*, 719 F.2d 992, 998 (9th Cir. 1984). In light of the presumption in favor of contracts terminable at will, the contract is not ambiguous and we need not resort to rules of construction for ambiguous contracts.

jury found for Eden on all three claims. In *Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215, 1239 (8th Cir.) *cert. denied*, 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 763 (1987), the Eighth Circuit found insufficient evidence to support the jury's findings on the antitrust claims and some of the fraud theories. The appellate court remanded the breach of contract claim. Delta overlooks the fact that the contract issue at trial was not the same as the one in the case at hand: Ryko terminated its contract with Eden for cause, therefore, the court did not address whether the Eden–Ryko contract was of indefinite duration and terminable at will. On remand, Ryko moved for summary judgment, arguing for the first time that the agreement with Eden could be terminated at will. In denying Ryko's motion for summary judgment, the district court observed that the court of appeals did not consider whether the agreement was of indefinite duration; the district court nevertheless concluded that it was bound by the appellate court's directive that the breach of contract action be retried. The district court did not address the merits of whether the contract was one of indefinite duration.

We conclude that the *Eden* decision provides no helpful interpretations of Iowa law.

### III.

The district court correctly concluded that the Delta–Ryko agreement is a contract of indefinite duration terminable at will upon reasonable notice.

AFFIRMED.