*PRELIMINARY PRINT*

VOLUME 598 U. S. PART 1

PAGES 218–229

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

APRIL 18, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# NEW YORK *v.* NEW JERSEY

## ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

No. 156, Orig.    Argued March 1, 2023—Decided April 18, 2023

In 1953, New York and New Jersey exercised their authority under Article I, § 10, of the Constitution to enter into a compact to address corruption at the Port of New York and New Jersey.   The Waterfront Commission Compact established a bistate agency known as the Waterfront Commission of New York Harbor, to which the States delegated their sovereign authority to conduct regulatory and law-enforcement activities at the Port.   The Compact does not address each State's power to withdraw from the Compact.

In 2018, New Jersey sought to unilaterally withdraw from the Compact, over New York's opposition.   New York filed a bill of complaint in this Court, and the parties then filed cross-motions for judgment on the pleadings, with the United States supporting New Jersey as *amicus curiae.*

*Held*: New Jersey may unilaterally withdraw from the Waterfront Commission Compact notwithstanding New York's opposition.   Pp. 223–229.

(a) The interpretation of an interstate compact approved by Congress presents a federal question, see *Cuyler* v. *Adams,* 449 U. S. 433, 438, the resolution of which begins with an examination of "the express terms of the Compact," *Tarrant Regional Water Dist.* v. *Herrmann,* 569 U. S. 614, 628.   Unlike certain other compacts, the Compact here does not address withdrawal.

Because the Compact is silent as to unilateral withdrawal, the Court looks to background principles of law that would have informed the parties' understanding when they entered the Compact.   As relevant here, interstate compacts "are construed as contracts under the principles of contract law."   *Ibid.*   Under the default contract-law rule at the time of the Compact's formation, a contract that contemplates "continuing performance for an indefinite time is to be interpreted as stipulating only for performance terminable at the will of either party."   1 R. Lord, Williston on Contracts § 4:23, p. 570.   Here, the States delegated their sovereign authority to the Commission on an ongoing and indefinite basis.   The default contract-law rule therefore "speaks in the silence of the Compact" and indicates that either State may unilaterally withdraw. *New Jersey* v. *New York*, 523 U. S. 767, 784.

Principles of state sovereignty also support New Jersey's position. "The background notion that a State does not easily cede its sovereignty

has informed" this Court's "interpretation of interstate compacts." *Tarrant*, 569 U. S., at 631. The nature of the delegation at issue here—delegation of a State's sovereign power to protect the people, property, and economic activity within its borders—buttresses the conclusion that New Jersey can unilaterally withdraw.

To be clear, the contract-law rule that governs the Compact here does not apply to other kinds of compacts that do not exclusively call for ongoing performance on an indefinite basis—such as compacts setting boundaries, apportioning water rights, or otherwise conveying property interests. Pp. 223–226.

(b) New York's additional arguments in support of its view that the Compact should be read to prohibit unilateral withdrawal are unpersuasive. First, New York argues that the Court should interpret the 1953 Compact in light of pre-1953 compacts that were silent on unilateral withdrawal but were understood to forbid it. But many of those compacts concerned boundaries and water-rights allocation—the very kinds of compacts that are not governed by the default contract-law rule authorizing unilateral withdrawal. Second, New York invokes international treaty law, which New York says generally prohibits a signatory nation's unilateral withdrawal from a treaty absent express language otherwise. But international treaty practice, to the extent it is relevant here, is equivocal. Third, New York points to the past practice of the States' resolving Commission-related disputes. But that practice says little about whether either State could unilaterally withdraw. Fourth, New York maintains that the Court's decision will have sweeping consequences for interstate compacts generally. But the Court's decision does not address all compacts, and States may propose language to compacts expressly allowing or prohibiting unilateral withdrawal. Pp. 226–228.

New Jersey's motion for judgment on the pleadings granted; New York's cross-motion for judgment on the pleadings denied.

KAVANAUGH, J., delivered the opinion for a unanimous Court.

*Judith N. Vale*, Deputy Solicitor General of New York, argued the cause for plaintiff. With her on the briefs were *Letitia James*, Attorney General of New York, *Barbara D. Underwood*, Solicitor General, *Grace X. Zhou* and *Stephen J. Yanni*, Assistant Solicitors General, and *Helena Lynch*, Assistant Attorney General.

*Jeremy M. Feigenbaum*, Solicitor General of New Jersey, argued the cause for defendant. With him on the briefs

were *Matthew J. Platkin*, Attorney General of New Jersey, *Sundeep Iyer* and *Jean P. Reilly*, Assistant Attorneys General, and *Emily N. Bisnauth*, *Amy Chung*, *Patrick Jhoo*, *Nathaniel Levy*, *Vivek N. Mehta*, *Kristina L. Miles*, *Daniel Resler*, *Jonathan W. Allen*, and *Sara M. Gregory*, Deputy Attorneys General.

*Austin L. Raynor* argued the cause for the United States as *amicus curiae* in support of defendant. With him on the brief were *Solicitor General Prelogar*, *Deputy Solicitor General Kneedler*, *Deputy Assistant Attorney General Harrington*, *Mark B. Stern* and *Alisa B. Klein*.*

JUSTICE KAVANAUGH delivered the opinion of the Court.

Under Article I, § 10, of the Constitution, each State possesses the sovereign authority to enter into a compact with another State, subject to Congress's approval. In 1953, New York and New Jersey exercised that authority and entered into the Waterfront Commission Compact. The Compact created a bistate agency to perform certain regulatory

---

*Briefs of *amici curiae* were filed for the State of Oregon by *Ellen F. Rosenblum*, Attorney General of Oregon, *Benjamin Gutman*, Solicitor General, and *Peenesh Shah*, Assistant Attorney General; for the State of Texas et al. by *Ken Paxton*, Attorney General of Texas, *Brent Webster*, First Assistant Attorney General, *Judd E. Stone II*, Solicitor General, *Lanora C. Pettit*, Principal Deputy Solicitor General, *Benjamin Wallace Mendelson*, Assistant Solicitor General, and *Christopher J. F. Galiardo* and *Cody C. Coll*, Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Treg Taylor* of Alaska, *Jeff Landry* of Louisiana, *Austin Knudsen* of Montana, *Aaron Ford* of Nevada, *Alan Wilson* of South Carolina, *Sean Reyes* of Utah, and *Jason Miyares* of Virginia; for Compact Entities by *Matthew S. Tripolitsiotis* and *Richard L. Masters*; for Law Professors by *Jaynee LaVecchia* and *Michelle Pallak Movahed*; for the Metropolitan Marine Maintenance Contractors' Association by *Stephen B. Kinnaird*, *Igor V. Timofeyev*, and *Sean D. Unger*; for Port Businesses et al. by *A. Matthew Boxer* and *McKenzie A. Wilson*; for the Waterfront Commission of New York Harbor by *Seth P. Waxman*, *David M. Lehn*, and *Edward Williams;* and for Jeffrey B. Litwak et al. by *Scott A. Eisman* and *David Y. Livshiz*.

and law-enforcement functions at the Port of New York and New Jersey. In 2018, after concluding that the decades-old Compact had outlived its usefulness, New Jersey sought to withdraw from the Compact. New York opposes New Jersey's withdrawal and contends that the Compact does not allow either State to unilaterally withdraw. We hold that New Jersey may unilaterally withdraw from the Waterfront Commission Compact notwithstanding New York's opposition.

I

In 1951, New York and New Jersey began a joint investigation of organized crime at the Port of New York and New Jersey, a commercial port that spans the border of the two States. To address corruption within the labor force on both sides of the Port, each State enacted legislation to form the Waterfront Commission Compact. See 1953 N. J. Laws p. 1511; 1953 N. Y. Laws p. 2417. New York and New Jersey obtained Congress's approval of the Compact in 1953, consistent with the Compact Clause of the Constitution. President Eisenhower signed the Compact. See 67 Stat. 541; U. S. Const., Art. I, § 10, cl. 3.

The Compact established a bistate agency known as the Waterfront Commission of New York Harbor. The Commission consists of two members, one appointed by the Governor of New York and the other by the Governor of New Jersey. Through the Compact, New York and New Jersey delegated to the Commission their sovereign authority to conduct regulatory and law-enforcement activities at the Port. For example, the Compact authorizes the Commission to oversee mandatory employment licensing for waterfront workers and to conduct law-enforcement investigations at the Port.

Under the Compact, New York and New Jersey must agree if they want to make any "[a]mendments and supplements." Art. XVI(1), 67 Stat. 557. The Compact also recognizes Congress's authority to "alter, amend, or repeal" the Compact. Art. XVI, §2, *ibid.* But the Compact does not

address each State's power to unilaterally withdraw: It neither expressly allows nor expressly proscribes unilateral withdrawal.

The Compact and Commission have operated for 70 years. But as the decades have passed, circumstances at the Port have changed. In 1953, roughly 70% of waterfront employees worked on the New York side of the Port. But by 2018, according to New Jersey, more than 80% of work hours occurred on the New Jersey side, and more than 80% of the Port's cargo flowed through the New Jersey side. New Jersey also came to view the Commission as ill-equipped to handle 21st-century security challenges and as a source of over-regulation that impedes job growth.

In 2018, the New Jersey Legislature passed and Governor Christie signed a law to withdraw New Jersey from the Waterfront Commission Compact. See 2017 N. J. Laws p. 2102. The statute required the New Jersey Governor to give 90 days' notice of the State's intention to withdraw. Upon withdrawal, the Commission would dissolve, and the New Jersey State Police would take over the Commission's law-enforcement functions on the New Jersey side of the Port.

The day after enactment of the withdrawal statute, the Commission sued in Federal District Court to stop New Jersey from unilaterally withdrawing from the Compact. The District Court ruled that New Jersey could not unilaterally withdraw. *Waterfront Comm'n of N. Y. Harbor* v. *Murphy,* 429 F. Supp. 3d 1 (NJ 2019). But the U. S. Court of Appeals for the Third Circuit reversed and ruled in New Jersey's favor, determining that state sovereign immunity barred the Commission's lawsuit. *Waterfront Comm'n of N. Y. Harbor* v. *Governor of New Jersey,* 961 F. 3d 234 (2020).

In 2021, in the wake of the Third Circuit's decision, Acting Governor Oliver announced New Jersey's intent to unilaterally withdraw from the Compact. Before the expected date of withdrawal, New York moved in this Court for leave to file a bill of complaint and for a temporary order preventing

New Jersey's withdrawal. This Court temporarily enjoined New Jersey from withdrawing from the Compact pending final disposition of this case. The Court later granted New York's motion for leave to file a bill of complaint and allowed the parties to file cross-motions for judgment on the pleadings. In this Court, the United States also participated as *amicus curiae* in support of New Jersey's unilateral withdrawal from the Compact.

## II

The question presented is straightforward: Does the Waterfront Commission Compact allow New Jersey to unilaterally withdraw from the Compact notwithstanding New York's opposition? The answer is yes.

The interpretation of the Waterfront Commission Compact—an interstate compact approved by Congress—presents a federal question. See *Cuyler* v. *Adams*, 449 U. S. 433, 438 (1981). To resolve the dispute over whether each State may unilaterally withdraw, we "begin by examining the express terms of the Compact as the best indication of the intent of the parties." *Tarrant Regional Water Dist.* v. *Herrmann*, 569 U. S. 614, 628 (2013).

Some interstate compacts expressly allow, prohibit, or limit unilateral withdrawal.[1] But this Compact does not address withdrawal. The Compact mentions neither "withdrawal" nor "termination" in any relevant context. The Compact provides for amendments, which require both States to agree. See Art. XVI(1), 67 Stat. 557. But unilat-

---

[1] See, *e. g.,* Central Interstate Low-Level Radioactive Waste Compact, Art. VII(d), 99 Stat. 1870 (1986) (expressly allowing unilateral withdrawal); Snake River Compact, Art. XII, 64 Stat. 33 (1950) (expressly providing that the compact will remain in force unless terminated by both state legislatures and consented to by Congress); New York-New Jersey Port Authority Compact, Art. 21, 42 Stat. 179 (1921) (expressly allowing unilateral withdrawal within two years of the compact's formation); Delaware River Basin Compact, Art. 1, § 1.6(a), 75 Stat. 691 (1961) (expressly allowing unilateral termination only after 100 years).

eral withdrawal does not constitute an amendment to the
Compact and thus does not implicate the amendment provi-
sion. The Compact also authorizes Congress to "alter,
amend, or repeal" the Compact. See Art. XVI, §2, *ibid.*
But Congress did not retain an *exclusive* right to terminate
the Compact.

Because the Compact's text does not address whether a
State may unilaterally withdraw, we look to background
principles of law that would have informed the parties' un-
derstanding when they entered the Compact. This Court
has long explained that interstate compacts "are construed
as contracts under the principles of contract law." *Tarrant*,
569 U. S., at 628; see also *Alabama* v. *North Carolina*, 560
U. S. 330, 359 (2010) (Kennedy, J., concurring in part and con-
curring in judgment); *Texas* v. *New Mexico*, 482 U. S. 124,
128–129 (1987); *Green* v. *Biddle*, 8 Wheat. 1, 92 (1823). To
that end, the Court has looked to "background principles of
contract law" to interpret compacts that are silent on a par-
ticular issue. *Mississippi* v. *Tennessee*, 595 U. S. ——, ——
(2021); see *Tarrant*, 569 U. S., at 628, 633.

To be sure, background rules of contract interpretation
may not override a compact's terms. *Alabama*, 560 U. S.,
at 351–352. This Court has said that a compact "is not just
a contract," but also "a federal statute enacted by Congress"
that preempts contrary state law. *Id.*, at 351; see *Tarrant*,
569 U. S., at 627, n. 8. But when the compact does not speak
to a disputed issue, background contract-law principles have
informed the Court's analysis.

Under the default contract-law rule at the time of the
Compact's 1953 formation, as well as today, a contract (like
this Compact) that contemplates "continuing performance
for an indefinite time is to be interpreted as stipulating only
for performance terminable at the will of either party."
1 R. Lord, Williston on Contracts §4:23, p. 570 (4th ed. 2022);
see also, *e. g.,* Restatement (Second) of Contracts §33, Com-

ment *d*, p. 94 (1979); 1 S. Williston, Law of Contracts § 38, p. 59 (1920); *Compania Embotelladora Del Pacifico, S. A.* v. *Pepsi Cola Co.*, 976 F. 3d 239, 245 (CA2 2020); *In re Miller's Estate*, 90 N. J. 210, 219, 447 A. 2d 549, 554 (1982); *Zimco Restaurants, Inc.* v. *Bartenders and Culinary Workers Union, Local 340*, 165 Cal. App. 2d 235, 240 (1958); *Fulghum* v. *Selma*, 238 N. C. 100, 103–104, 76 S. E. 2d 368, 370–371 (1953); *Bailey* v. *S. S. Stafford, Inc.*, 178 App. Div. 811, 815, 166 N. Y. S. 79, 82 (1917).  Parties to a contract that calls for ongoing and indefinite performance generally need not continue performance after the contractual relationship has soured, or when the circumstances that originally motivated the agreement's formation have changed, for example.  See *Delta Servs. & Equip., Inc.* v. *Ryko Mfg. Co.*, 908 F. 2d 7, 11 (CA5 1990); *Jespersen* v. *Minnesota Min. & Mfg. Co.*, 183 Ill. 2d 290, 295, 700 N. E. 2d 1014, 1017 (1998).

That default contract-law rule—that contracts calling for ongoing and indefinite performance may be terminated by either party—supports New Jersey's position in this case. Through the Waterfront Commission Compact, New York and New Jersey delegated their sovereign authority to the Commission on an ongoing and indefinite basis.  And the Compact contemplates the Commission's exercise of that authority on an ongoing and indefinite basis.  The default contract-law rule therefore "speaks in the silence of the Compact" and indicates that either State may unilaterally withdraw.  *New Jersey* v. *New York*, 523 U. S. 767, 784 (1998).

Principles of state sovereignty likewise support New Jersey's position.  "The background notion that a State does not easily cede its sovereignty has informed our interpretation of interstate compacts."  *Tarrant*, 569 U. S., at 631. Here, the Compact involves the delegation of a fundamental aspect of a State's sovereign power—its ability to protect the people, property, and economic activity within its borders—to a bistate agency.  The nature of that delegation

buttresses our conclusion that New York and New Jersey did not permanently give up, absent the States' joint consent or congressional action to terminate the Compact, their authority to withdraw from the Compact and to exercise those sovereign police powers at the Port as each State sees fit.

We draw further guidance from the fact that, as is undisputed, New York and New Jersey never intended for the Compact and Commission to operate forever.  See Brief for New York 19, 26; Brief for New Jersey 33, n. 8; Tr. of Oral Arg. 69, 100–101.  Given that the States did not intend for the agreement to be perpetual, it would not make much sense to conclude that each State implicitly conferred on the other a perpetual veto of withdrawal.

In sum, background principles of contract law, reinforced here by principles of state sovereignty and the fact that the States did not intend for the Compact to operate forever, indicate that New Jersey may unilaterally withdraw from the Waterfront Commission Compact.  To be clear, the contract-law rule that we apply today governs compacts (like this Compact) that are silent as to unilateral withdrawal and that exclusively call for ongoing performance on an indefinite basis.  But that rule does not apply to other kinds of compacts that do not exclusively call for ongoing performance on an indefinite basis—such as compacts setting boundaries, apportioning water rights, or otherwise conveying property interests.  Both New York and New Jersey agree that States may not unilaterally withdraw from compacts that are silent as to withdrawal and that set boundaries, apportion water rights, or otherwise convey property interests.  See Brief for New York 3–4, 30, 38; Brief for New Jersey 27–29; Tr. of Oral Arg. 30, 44, 55.

## III

New York advances several additional arguments in support of its view that the Compact nonetheless should be read to prohibit unilateral withdrawal.  But none is persuasive.

*First*, New York invokes the history of compacts before 1953. In New York's view, many pre-1953 compacts were silent on unilateral withdrawal but nonetheless were understood to forbid it. New York says that when States at that time wanted to allow unilateral withdrawal, the compacts would expressly provide for it. And New York adds that we should interpret the 1953 Compact in light of that practice.

As New York acknowledges, however, many of those pre-1953 compacts concerned boundaries and water-rights allocation. See Brief for New York 3–4, 30; Tr. of Oral Arg. 30, 33. Those compacts, as we have explained, are not governed by the default contract-law rule authorizing unilateral withdrawal. New York offers no persuasive evidence that the background understanding of withdrawal from boundary and water-rights compacts also applied to compacts that exclusively call for ongoing performance on an indefinite basis by an interstate agency. Indeed, just three years before the Compact here was formed, the United States explained to this Court that a compacting State could unilaterally withdraw from a compact that was silent as to withdrawal and that required an ongoing and indefinite exercise of sovereign authority. See Brief for United States in *West Virginia ex rel. Dyer* v. *Sims*, O. T. 1950, No. 147, pp. 23–24, 26–27. In addition, New York overlooks that some compacts, including one formed three years before this Compact, expressly prohibited unilateral withdrawal. See Snake River Compact, Art. XII, 64 Stat. 33; see also, *e. g.*, Goose Lake Basin Compact, Arts. V, VII(B), 98 Stat. 292 (1984). That language would have been unnecessary if New York were correct about the pre-1953 practice.

In short, New York identifies no clear historical practice in support of its view that compacts calling for ongoing and indefinite performance and that were silent on withdrawal were understood as of 1953 to prohibit unilateral withdrawal.

*Second*, New York invokes international treaty law. According to New York, international law generally prohibits a signatory nation's unilateral withdrawal from a treaty absent express language otherwise. But to the extent that international treaty practice is relevant here, it is equivocal. Scholars have "long debated" whether nations may unilaterally withdraw from treaties that do not expressly authorize withdrawal. L. Helfer, Exiting Treaties, 91 Va. L. Rev. 1579, 1592 (2005). And although the Vienna Convention on the Law of Treaties (to which the United States is not a party) provides that nations generally may not withdraw from a treaty absent express authorization, the Convention acknowledges that the nature of the treaty may nonetheless imply a right of withdrawal. Art. 56(1), May 23, 1969, 1155 U. N. T. S. 331; see also J. Brierly, The Law of Nations 240 (4th ed. 1949).

*Third*, New York points out that New York and New Jersey have resolved Commission-related disputes in the decades since 1953. According to New York, that practice suggests that the Compact prohibits unilateral withdrawal. But the States' past success in resolving disputes says little about whether New York or New Jersey could unilaterally withdraw if and when either State wanted to do so.

*Fourth*, New York argues that allowing New Jersey to withdraw would have sweeping consequences for interstate compacts generally. But our decision today only addresses a compact that (i) is silent on unilateral withdrawal; (ii) calls for ongoing and indefinite performance; and (iii) does not set boundaries, apportion water rights, or otherwise convey property interests. Moreover, for any current and future compacts, States can propose language expressly allowing or prohibiting unilateral withdrawal if they wish to do so.

\* \* \*

New Jersey may unilaterally withdraw from the Waterfront Commission Compact notwithstanding New York's op-

position.    We therefore grant New Jersey's motion for judgment on the pleadings and deny New York's cross-motion.

*It is so ordered.*

Page Proof Pending Publication

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None