COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Chaney
Argued at Richmond, Virginia


RICHARD ARCHER, DDS, ET AL.

v.      Record No. 0012-25-2

THE VIRGINIA BOARD OF DENTISTRY, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 24, 2026

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

William H. Hurd (Michael W. Thomas; Eckert Seamans Cherin &
Mellott, LLC, on briefs), for appellants.

Robert S. Claiborne, Jr., Assistant Attorney General (Jason S.
Miyares,[1] Attorney General; Graham K. Bryant, Deputy Solicitor
General; Stanley W. Hammer, Assistant Attorney General, on brief),
for appellees.

Amicus Curiae: Council of State Governments, National Center for
Interstate Compacts (Jennifer McLain McLemore; Samantha T.
Nance; Williams Mullen; Embry Merritt Womack Nance, PLLC,
on brief), for appellees.

Richard Archer, DDS, John L. Harris, III, DDS, and Adel Rizkalla, DDS, (hereinafter

"the dentists") filed suit against the Virginia Board of Dentistry, alleging that the Dentist and

Dental Hygienist Compact, codified at Code § 54.1-2729.02, violated the Virginia Constitution.

The Board demurred to the Complaint, which the circuit court sustained. The dentists now

appeal.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

# I. BACKGROUND[2]

In 2024, the General Assembly enacted the Dentist and Dental Hygienist Compact Act, which authorized Virginia to enter into the Dentist and Dental Hygienist Compact. The Compact aims "to facilitate the interstate practice of dentistry and dental hygiene and improve public access to dentistry and dental hygiene services by providing dentists and dental hygienists licensed in a participating state the ability to practice in participating states in which they are not licensed." Code § 54.1-2729.02 art. 1. By enacting the Compact Act, Virginia joined several other states—including Colorado, Iowa, Kansas, Maine, Minnesota, Tennessee, Washington, and Wisconsin—in participating in the Compact. The Compact Act was codified at Code § 54.1-2729.02.

The Compact lists specific purposes, including enabling dentists and dental hygienists licensed in one participating state "to practice in other participating states without satisfying burdensome and duplicative requirements associated with securing a license to practice in those states." *Id.* at art. 1(1).

To accomplish this objective, the Compact allows dentists and dental hygienists licensed in any participating state to apply for and obtain "compact privilege," permitting them to practice in other participating states. *Id.* at art. 4. In essence, the Compact "[p]romotes mobility and addresses workforce shortages through each participating state's acceptance of a compact privilege to practice in that state." *Id.* at art. 1(2).

---

[2] "We apply well-established principles to guide our review of a circuit court's judgment sustaining a demurrer." *Martin v. Lafountain*, 79 Va. App. 232, 236 n.1 (2023) (quoting *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. Accordingly, we accept as true all properly pled facts and all inferences fairly drawn from those facts." *Id.* (quoting *Dunn*, 281 Va. 557).

To qualify for compact privilege, the Compact requires applicants to hold a license in a participating state, submit an application, pay a fee, meet necessary educational requirements, and report any adverse action against them in any nonparticipating state. *Id.* at art. 4(A).

The Compact also establishes the Dental and Dental Hygienist Compact Commission, which is described as a "joint government agency whose membership consists of all participating states that have enacted the Compact." *Id.* at art. 7(A). The Commission "is an instrumentality of the participating states acting jointly and not an instrumentality of any one state." *Id.* The licensing authority of each state selects a commissioner to sit on the Commission on that state's behalf. *Id.* at art. 7(B)(1).

The Compact expressly enumerates powers given to the Commission, which include the power to establish a code of conduct, to adopt rules and bylaws, to initiate legal action, to purchase insurance, and to hire employees. *Id.* at art. 7(C). In addition, "[t]he Commission may levy on and collect an annual assessment from each participating state . . . to cover the cost of the operations and activities of the Commission and its staff." *Id.* at art. 7(E)(3).

The Compact also gives the Commission authority to "promulgate reasonable rules in order to effectively and efficiently implement and administer the purposes and provisions of" the Compact. *Id.* at 9(A). The Commission's rulemaking authority is to be "liberally construed so as to effectuate the purposes and the implementation and administration of the Compact." *Id.* at art. 12(A). The Commission's rules "shall have the force of law in each participating state" except to the extent they "conflict with the laws of the participating state that establish the participating state's scope of practice" for dentists and dental hygienists. *Id.* at art. 9(B).

The Compact provides guidance as to what should happen if there is a conflict between (1) a participating state's laws and the Compact, and (2) a participating state's laws and the rules of the Commission. First, if a participating state's laws conflict with the Compact, the Compact

triumphs: "Any laws, statutes, regulations, or other legal requirements in a participating state in conflict with this Compact are superseded to the extent of the conflict." *Id.* at art. 13(B). However, the Board of Dentistry has emphasized that the Compact itself is a statute—enacted by the Virginia General Assembly as Code § 54.1-2729.02. If a participating state's laws conflict with the rules of the Commission, the state's law triumphs: "where the rules of the Commission conflict with the laws of the participating state that establish the participating state's scope of practice as held by a court of competent jurisdiction, the rules of the Commission shall be ineffective in that state to the extent of the conflict."[3] *Id.* at art. 9(B).

The Compact also provides a withdrawal mechanism: "Any participating state may withdraw from this Compact by enacting a statute repealing that state's enactment of the Compact." *Id.* at art. 11(B). Any withdrawal "shall not take effect until 180 days after enactment of the repealing statute." *Id.* at art. 11(B)(1).

A group of dentists licensed in Virginia—Richard Archer, John L. Harris, III, and Adel Rizkalla—sued the Virginia Board of Dentistry.[4] Dr. Archer is the Senior Associate Dean of Clinical Affairs at the Virginia Commonwealth University School of Dentistry, Dr. Harris

---

[3] The Compact defines "scope of practice" as

> the procedures, actions, and processes a dentist or dental hygienist licensed in a state is permitted to undertake in that state and the circumstances under which the licensee is permitted to undertake those procedures, actions, and processes. Such procedures, actions, and processes and the circumstances under which they may be undertaken may be established through means, including, but not limited to, statute, regulations, case law, and other processes, available to the state licensing authority or other government agency.

Code § 54.1-2729.02 art. 2.

[4] The complaint also named several officers and members of the Virginia Board of Dentistry in their official capacities, as well as the to-be-appointed Commissioner to the Dentist and Dental Hygienist Compact Commission.

practices privately in Roanoke, and Dr. Rizkalla is a former President of the Virginia Board of Dentistry and teaches at the Howard University College of Dentistry. The dentists sought a declaratory judgment that the Compact violated the Virginia Constitution—and preliminary and permanent injunctions preventing the Compact's implementation. They argued to the circuit court that the Compact violated the Virginia Constitution on three grounds. In Count I, they asserted that the Compact unconstitutionally delegated the General Assembly's legislative power to an "interstate entity dominated by other States." In Count II, they asserted that the Compact unconstitutionally abridged the Commonwealth's police power. In Count III, they asserted that the Compact violated the Virginia Constitution's prohibition against special legislation.

The Board demurred, arguing that the dentists failed to state a claim because the Compact was constitutional. The Board also argued in their demurrer that the dentists lacked standing to sue. The circuit court found that the dentists had standing to sue because "they have a direct interest in the outcome that is distinct from the public at large because they are licensed to practice dentistry in Virginia and the alleged unconstitutionality of the Compact specifically impacts their profession." Nonetheless, the circuit court sustained the demurrer, holding that "although Plaintiffs have established standing, their Complaint fails to state a cause of action." The dentists now appeal to this Court, advancing the same arguments on appeal.

## II. ANALYSIS[5]

"As the Supreme Court has stated, 'The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted.'" *Layla H. v. Commonwealth*, 81 Va. App. 116, 128 (2024) (quoting *Kaltman v. All Am. Pest Control, Inc.*,

---

[5] While the Board argues on appeal that "this Court can affirm [the circuit court's] ruling sustaining the demurrer on the alternative ground that [the dentists] lacked standing," they do not assign cross-error to the decision of the circuit court that the dentists had standing. For purposes of this appeal, we assume without deciding that the dentists have standing to bring this suit and thus address the merits of the dentists' argument.

281 Va. 483, 488-89 (2011)). "We review a circuit court's decision on demurrer de novo." *Id.* (quoting *Rafalko v. Georgiadis*, 290 Va. 384, 396 (2015)).

## A. Delegation

The dentists argue, "The Circuit Court erred by ruling that Plaintiffs did not sufficiently plead that the Compact unconstitutionally delegates and divests power from the General Assembly."

### 1. Delegation of Legislative Power to the Commission

The dentists first argue that the delegation of legislative power to the Commission violates the Virginia Constitution because "the assigning of rule-making—*i.e.* legislative authority—to the Commission violates the non-delegation/non-divesting principles."

Article IV, § 1 of the Virginia Constitution provides, "The legislative power of the Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and House of Delegates." The Supreme Court has held that "delegation is essential to carry out the legitimate functions of government." *Bell v. Dorey Elec. Co.*, 248 Va. 378, 379 (1994). "[D]elegations of legislative power are valid only if they establish specific policies and fix definite standards to guide the official, agency, or board in the exercise of the power. Delegations of legislative power which lack such policies and standards are unconstitutional and void." *Id.* at 380 (quoting *Ames v. Town of Painter*, 239 Va. 343, 349 (1990)). Legislative directives must "sufficiently direct and limit the authority delegated to the [agency]." *Id.* at 382.

Here, the Compact creates the Commission and gives it specific, enumerated powers, including the power to establish a code of conduct, to adopt rules and bylaws, to maintain financial records, to initiate legal proceedings, to purchase insurance, and to hire employees. Code § 54.1-2729.02 art. 7(C). Most importantly, the Compact empowers the Commission to "promulgate reasonable rules in order to effectively and efficiently implement and administer the

- 6 -

purposes and provisions of this Compact." *Id.* at art. 9(A). Those specific purposes are enumerated in Article 1 of the Compact. *Id.* at art. 1.

In addition, the Compact limits the Commission's rulemaking power, expressly providing, "A Commission rule shall be invalid and have no force or effect only if a court of competent jurisdiction holds that the rule is invalid because the Commission exercised its rulemaking authority in a manner that is beyond the scope and purposes of this Compact, or the powers granted hereunder." *Id.* at art. 9(A). The dentists' argument that the General Assembly has delegated unbridled legislative power to the Commission is unsupported by the plain text of the Compact.

Therefore, we simply cannot find that the General Assembly unconstitutionally delegated legislative power to the Commission. The Compact gives the Commission specific responsibilities with specific goals in mind. Moreover, the Compact expressly limits the Commission's rulemaking power to the "scope and purposes of this Compact," and subjects the Commission's rules to judicial review. *Id.* The Compact, therefore, is not an unconstitutional delegation of legislative power as it provides "specific policies and fix[es] definite standards to guide the official, agency, or board in the exercise of the power." *Bell*, 248 Va. at 380 (quoting *Ames*, 239 Va. at 349).

### 2. Delegation to an Interstate Commission

The dentists further argue that the delegation to the Commission is unconstitutional because the Commission is an interstate agency, which "will be dominated by other States, will not be amenable to the people of Virginia and, thus, cannot be an appropriate entity to receive a delegation of Virginia's legislative power."

States are permitted to delegate their legislative power to an interstate agency, especially where a problem requires the cooperation of several states. *See West Virginia ex rel. Dyer v.*

*Sims*, 341 U.S. 22, 31 (1951); *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 618-620 (2013). In *Sims*, West Virginia entered into an interstate compact with surrounding states with congressional approval to control water pollution in the Ohio River. 341 U.S. at 24. The West Virginia Supreme Court held that the delegation violated the West Virginia Constitution "because it [was] to a body outside the State and because its Legislature may not be free, at any time, to withdraw the power delegated." *Id.* at 30. The United States Supreme Court reversed, holding that "the State has bound itself to control pollution by the more effective means of an agreement with other States. The Compact involves a reasonable and carefully limited delegation of power to an interstate agency." *Id.* at 31. Writing for the majority, Justice Frankfurter noted that states' decisions to compact with each other "adapts to our Union of sovereign States the age-old treaty-making power of independent sovereign nations. Adjustment by compact without a judicial or quasi-judicial determination of existing rights had been practiced in the Colonies, [and] was practiced by the States before the adoption of the Constitution." *Id.* (quoting *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 104 (1938)).

Here, the text of the Virginia Constitution is silent as to delegations to multistate agencies, yet there is also no authority in Virginia for the proposition that our Virginia Constitution prohibits the use of such bodies. Moreover, the Vesting Clause of the West Virginia Constitution (which the United States Supreme Court held permitted a delegation to an interstate agency in *Sims*) is very similar to the Vesting Clause of the Virginia Constitution. *Compare* W. VA. CONST. art. VI, § 1 ("The legislative power shall be vested in a Senate and House of Delegates."), *with* VA. CONST. art. IV, § 1 ("The legislative power of the Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and

House of Delegates."). In addition, the current Virginia Constitution was adopted in 1971—two decades after *Sims* was decided—against a backdrop in which *Sims* was the law of the land.

Therefore, we hold that the delegation of legislative power to an interstate commission in this case is also permissible under the Virginia Constitution.

### 3. The Compact's Article 13(B) Conflict Rule

The dentists argue that the General Assembly has unconstitutionally divested itself of legislative power because "any rule adopted by the Commission automatically takes precedence over any statute adopted by the General Assembly, and the General Assembly has expressly renounced the authority to override any Commission rule."

The Compact gives the Commission's rules "the force of law in each participating state," but limits the Commission's rulemaking power to rules that "administer the purposes and provisions of this Compact." Code § 54.1-2729.02 art. 9(A), (B). Any rule that exceeds this authority "shall be invalid and have no force or effect." *Id.* at art. 9(A). In addition, the Compact anticipates there may be a conflict between a state's statute and a rule promulgated by the Commission, and provides that "where the rules of the Commission conflict with the laws of the participating state that establish the participating state's scope of practice as held by a court of competent jurisdiction, the rules of the Commission shall be ineffective in that state to the extent of the conflict." *Id.* at art. 9(B).

Furthermore, the dentists' characterization of Article 13(B) as a "supremacy clause" is misleading. They allege, "The Compact not only gives the Commission broad power to make rules, it mandates that those rules prevail over laws, statutes, regulations, or other legal requirements in a participating State." Article 13(B) provides, "Any laws, statutes, regulations, or other legal requirements in a participating state in conflict with *this Compact* are superseded to the extent of the conflict." (Emphasis added). Article 13(B) allows the *Compact*—not the

*rules promulgated by the Commission*—to supersede conflicting state law. This is very different than the dentists' characterization of Article 13(B), which they describe as the General Assembly giving the Commission "plenary power to adopt rules governing the practice of dentists and dental hygienists in Virginia."

The Compact, however, *is* Virginia law. Indeed, it is a Virginia statute that was voted on and passed by both houses of the General Assembly, signed into law by the Governor, and codified in the Virginia Code. The General Assembly is permitted to enact statutes that supersede other statutes that are then existing as it sees fit. We therefore hold that the General Assembly has not divested itself of its legislative power in violation of the Virginia Constitution by enacting a statute that codifies the Dentist and Dental Hygienist Compact into Virginia statutory law as Code § 54.1-2729.02.

### 4. Assessments

Finally, the dentists argue that the Compact violates the Appropriations Clause of the Virginia Constitution because "the assessments imposed on Virginia by the Commission are not subject to the discretion of the General Assembly regarding appropriations."

The Virginia Constitution provides, "No money shall be paid out of the State treasury except in pursuance of appropriations made by law." VA. CONST. art. X, § 7. The Compact permits—but does not require—the Commission to "collect an annual assessment from each participating state . . . to cover the cost of the operations and activities of the Commission and its staff." Code § 54.1-2729.02 art. 7(E)(3).

However, there is a significant distinction between simply incurring an obligation and the General Assembly's voting to appropriate the funds to pay for that obligation. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 308 (2020) ("Incurring an obligation, of course, is different from paying one."). The mere prospect of an assessment does not run afoul of the

Appropriations Clause of the Virginia Constitution. Even if the Commission decided to collect an assessment from Virginia, the General Assembly would have to appropriate the funds to pay it before any payment could be made. Thus, the Compact's assessment provision does not violate the Virginia Constitution.

### B. Alleged Abridgement of the Commonwealth's Police Power

The dentists also argue, "The Circuit Court erred by ruling that Plaintiffs have failed to state a cause of action that the Compact violates the non-abridgement principles of the Virginia [C]onstitution." The dentists repeat their arguments regarding the legislative delegation to the Commission and the "supremacy clause" of the Compact in this assignment of error, which we addressed *supra*. In addition, they also argue that the Compact abridges the Commonwealth's police power because "the General Assembly has surrendered its authority to negate any Commission rules within the boundaries of Virginia."

The Virginia Constitution provides that the "police power of the Commonwealth . . . shall never be abridged." VA. CONST. art. IX, § 6.

> [T]he police power is best described as the Commonwealth's inherent power, as a sovereign, to enact laws "to promote the health, peace, morals, education[,] and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity."

*Elizabeth River Crossings OpCo, LLC v. Meeks*, 286 Va. 286, 321 (2013) (second alteration in original) (quoting *Mumpower v. Hous. Auth. of Bristol*, 176 Va. 426, 440 (1940)). "The Commonwealth's police power is abridged when the government can no longer use its discretion in exercising this governmental power." *Id.*

The Compact provides, "Any participating state may withdraw from this Compact by enacting a statute repealing that state's enactment of the Compact." Code § 54.1-2729.02 art. 11(B). In passing the Compact, the General Assembly expressly reserved the right to leave the

Compact when it so chooses.[6]  This is not an example of the government "no longer us[ing] its discretion in exercising this governmental" police power.  *Elizabeth River*, 286 Va. at 321.  It therefore cannot be said that the General Assembly has "surrendered its authority" to the Commission, as it is free to repeal the statute and withdraw from the Compact if it so chooses.

In addition, the Compact envisions that states will retain significant power over licensing dentists.  The Compact "[e]nhances the ability of participating states to protect the public's health and safety."  Code § 54.1-2729.02 art. 1(4).  The Compact "[d]oes not interfere with licensure requirements established by a participating state."  *Id.* at art. 1(5).  "A licensee providing dentistry or dental hygiene pursuant to a compact privilege in a remote state [Virginia] is subject to that state's regulatory authority."  *Id.* at art. 4(D).  Consequently, we simply cannot say that the Compact abridges the Commonwealth's police power because it allows Virginia to retain significant authority over the regulation of dentistry.

### C.  The Claim of Special Legislation

The dentists lastly argue, "The Circuit Court erred by ruling that Plaintiffs have failed to sufficiently plead a claim that the Compact represents unconstitutional special legislation."

The Virginia Constitution provides:

> The General Assembly shall not enact any local, special, or private law in the following cases:
>
> . . . .
>
> (12) Regulating labor, *trade*, mining, or manufacturing, or the rate of interest on money.
>
> . . . .

---

[6] Of course, any withdrawal from the Compact would actually take effect 180 days after repeal, as required by Article 11(B)(1).  However, we do not find this to be a meaningful abridgement of the Commonwealth's police power.  The United States Supreme Court has expressly endorsed various restrictions on withdrawal contained within interstate compacts.  *See New York v. New Jersey*, 598 U.S. 218, 223 (2023) ("Some interstate compacts expressly allow, prohibit, or limit unilateral withdrawal.").

> (18) Granting to any private corporation, association, or *individual*
> any special or exclusive right, privilege, or immunity.

VA. CONST. art. IV, § 14 (emphases added). "A law is 'special' in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from those upon which, but for such separation, it would operate." *Bray v. Cnty. Bd. of Arlington Cnty.*, 195 Va. 31, 36-37 (1953) (quoting *State ex rel. Budd v. Hancock*, 48 A. 1023, 1024 (N.J. 1901)). "The test for statutes challenged under the special-laws prohibitions in the Virginia Constitution is that they must bear 'a reasonable and substantial relation to the object sought to be accomplished by the legislation.'" *Jefferson Green Unit Owners Ass'n v. Gwinn*, 262 Va. 449, 459 (2001) (quoting *Benderson Dev. Co. v. Sciortino*, 236 Va. 136, 147 (1988)). "The party assailing the enactment carries the burden of establishing 'that it does not rest upon a reasonable basis, and is essentially arbitrary.'" *Id.* (quoting *Holly Hill Farm Corp. v. Rowe*, 241 Va. 425, 431 (1991)).

The dentists argue that the Compact is special legislation because it creates materially different standards for Virginia-licensed dentists and out-of-state-licensed dentists. In Virginia, dentists are required to complete a two-day "hand skills" exam to be licensed. In Washington, another participating state, dentists can complete this requirement online. The dentists argue that the Compact is special legislation because it permits Washington-licensed dentists to circumvent Virginia's hand skills test and practice in Virginia.

We find that the Compact is not special legislation because it bears "a reasonable and substantial relation to the object sought to be accomplished by the legislation." *Jefferson Green Unit Owners Ass'n*, 262 Va. at 459 (quoting *Benderson*, 236 Va. at 136). Its purpose is "to facilitate the interstate practice of dentistry and dental hygiene and improve public access to dentistry and dental hygiene services by providing dentists and dental hygienists licensed in a participating state the ability to practice in participating states in which they are not licensed."

- 13 -

Code § 54.1-2729.02 art. 1.  The Compact's differentiation between in-state licensees and out-of-state licensees is thus necessary to facilitate its very purpose of enabling the interstate practice of dentistry.

In addition, the Compact treats out-of-state licensees uniformly, subjecting them all to the same requirements in order to practice in Virginia (e.g., holding a license in a participating state; submitting an application; paying fees; meeting any educational requirements of the state in which they are seeking to practice; graduating from an accredited program; passing board exams).  *Id.* at art. 4(A).

We therefore do not find that the Compact is unconstitutional special legislation because the Compact bears a reasonable and substantial relationship to its professed purpose.  In addition, the dentists did not carry their burden of proving that the Compact's differentiation between in-state and out-of-state dentists "does not rest upon a reasonable basis, and is essentially arbitrary." *Jefferson Green Unit Owners Ass'n*, 262 Va. at 459 (quoting *Holly Hill Farm*, 241 Va. at 431). The circuit court therefore did not err when it held that the Compact is not unconstitutional special legislation.[7]

### III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the circuit court's judgment.

*Affirmed.*

---

[7] On brief, the dentists also argue, "The Circuit Court erred by minimizing the legislative powers of the Commission created by the Compact."  In addition, they claim, "The Circuit Court erred by disregarding the dangers to the public caused by the Compact."  However, on brief, the dentists cite to no legal authority in support of these arguments.  This Court has often stated, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'  Unsupported assertions of error 'do not merit appellate consideration.'"  *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)).  We therefore find these two assignments of error to be waived on appeal.